## S10A0793. JOHNSON v. THE STATE.

(700 SE2d 346)

THOMPSON, Justice.

Defendant Temyarance Deyale Johnson was convicted of malice murder in connection with the shooting death of Demarcus Waddell.[1] He appeals, assigning error to the sufficiency of the evidence and the performance of trial counsel. Finding no error, we affirm.

Viewing the evidence in a light favorable to the verdict, we find the following: On the evening of November 27, 2005, the victim was shot and killed outside of a Pizza Hut, where he worked. Witnesses described his attacker as a light-skinned African-American male dressed entirely in black and wearing a black mask. Police arrived at the scene to find the victim lying dead in the parking lot in a pool of blood after having been shot between eight and ten times, with multiple shots to the head. According to the medical examiner, this was an "overkill" and "rage" shooting, possibly indicating the victim and his attacker knew one another.

Months prior to his death, the victim was involved in a romantic relationship with Charlene Cole. The victim and Cole ended their romantic involvement, but they remained best friends, even after Cole began dating defendant and moved into his apartment.

Defendant and the victim had a tense relationship. On several occasions they argued heatedly regarding the victim's close friendship with Cole, and, according to witness testimony, these arguments sometimes became physical. On one such occasion defendant punched the victim with brass knuckles.

Nevarro Brinson, defendant's best friend, became involved in the conflict between defendant and the victim.[2] Once Brinson brandished a handgun at the victim and threatened him. In the weeks before the victim's death, the victim told close friends that defendant had threatened to kill him.

Defendant and Brinson were co-workers at a warehouse on the military base in Dougherty County. Their friendship was exceptionally close; they were like brothers and told one another that they would die for each other.

---

[1] The victim was murdered on November 27, 2005. The grand jury indicted defendant on September 27, 2006, and charged him with malice murder, conspiracy to commit murder, felony murder, and possession of a firearm during the commission of a felony. Trial commenced on November 6, 2006. The jury returned its verdict on November 15, finding defendant guilty on all counts. The trial court sentenced defendant to life for malice murder, and five years (consecutive) for the firearm count. The remaining counts were merged and vacated. Defendant's timely filed motion for a new trial was denied on January 4, 2010. Defendant filed a notice of appeal on January 6, 2010. The appeal was docketed for the April term of this Court and submitted for a decision on the briefs.

[2] Brinson and defendant were indicted and tried together.

Less than six weeks before the victim was murdered, defendant and Brinson purchased a .40 caliber Highpoint handgun, registered under Brinson's name, and paid for by defendant. They also purchased .40 caliber ammunition. Brinson and defendant shared the firearm and the ammunition which they stored in defendant's apartment. This was the gun that was used to shoot and kill the victim.

On November 5, 2005, three weeks before the murder, Brinson reported the handgun stolen from his unlocked car, which was parked outside of defendant's apartment.[3] However, a few days before Thanksgiving, defendant gave Brinson the weapon at Brinson's request. Brinson returned the weapon to defendant the day after the victim was shot.

Police executed a search warrant for Brinson's room on the base and found black clothing and a mask matching the description of the shooter's clothing. Police also searched defendant's apartment. When they arrived, Cole told investigators that there was a .40 caliber handgun inside the apartment. During their search, investigators found a shotgun as well as a box for the handgun and a receipt for .40 caliber ammunition, but did not find the handgun. When investigators asked Cole and defendant the location of the handgun, they both claimed they did not know.

When police informed Cole and defendant they would be taken to the police station for questioning, Cole asked to pack some bags to spend the night at her mother's home. Defendant told her privately that she should use his camouflage canvas bag to pack her things.

Defendant stored the handgun in his canvas bag earlier that day. While being questioned at the police station, defendant again insisted he did not know the location of the firearm. However, later in the interview, after speaking with Cole, defendant told investigators that the firearm was inside his camouflage canvas bag. At that time he admitted that he cleaned the gun in order to protect Brinson. It was also shown that the night before he cleaned the handgun and washed the bullets to remove any fingerprints.

1. The evidence was sufficient to enable any rational trier of fact to find defendant guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Although defendant himself did not shoot the victim, his conduct before, during, and after the shooting supported the finding that he aided and abetted Brinson in murdering the victim. OCGA § 16-2-20;

---

[3] After the murder, defendant told investigators that he and Brinson had planned to report the firearm stolen in case anything happened.

*Hewitt v. State*, 277 Ga. 327, 329 (588 SE2d 722) (2003).

2. To prevail on a claim of ineffective assistance of trial counsel, defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). In addition, defendant must overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999). The trial court's determination with respect to effective assistance of counsel will be affirmed unless its findings are clearly erroneous. *Johnson v. State*, 266 Ga. 380, 383 (467 SE2d 542) (1996).

Before analyzing defendant's specific claims of ineffective assistance, we note defendant's assertion that his trial attorney's relative inexperience led him to commit these errors.[4] However, trial counsel's lack of experience will not be a factor in our *Strickland* analysis for two reasons: First, "an attorney's lack of experience alone does not constitute grounds for a claim of ineffective assistance of counsel." *Potter v. State*, 273 Ga. 325, 326 (540 SE2d 184) (2001). Second, trial counsel was assisted by a seasoned criminal attorney.

Defendant asserts trial counsel failed to take action when a witness, who was called to the stand and questioned by co-defendant Brinson, testified that defendant offered to pay him to lie on his behalf, and then refused to answer any questions on cross-examination. However, when the witness refused to testify further, the trial court, on its own motion, instructed the jury to disregard the witness' testimony. See in this connection *Soto v. State*, 285 Ga. 367, 368 (677 SE2d 95) (2009) ("when a witness refuses to continue to testify after having already done so, the proper remedy is to strike pertinent portions of the witness' testimony"). Moreover, defense counsel sought, and was granted, permission to introduce evidence impeaching the witness. Thus, it cannot be said that defense counsel rendered deficient performance when the witness refused to continue to testify.

Defendant also alleges his trial counsel was ineffective because he requested the trial court to instruct the jury on the law of accessory after the fact, and hindering the apprehension of a criminal. See OCGA § 16-10-50. Inasmuch as the trial court refused to give the requested charges, it cannot be said that defendant was

---

[4] At the time of trial, defense counsel had been a member of the bar for a year and a half and had not tried a murder case.

prejudiced by trial counsel's request.

Next, defendant posits that trial counsel was ineffective because he failed to file a motion to sever his trial from that of his co-defendant, Brinson, because their defenses were antagonistic. However, "[a]ntagonism between co-defendants is not enough in itself to require severance, rather [defendant] must also demonstrate that he was harmed by the failure to sever." (Punctuation omitted.) *Rivers v. State*, 283 Ga. 1, 8 (655 SE2d 594) (2008). Defendant has not made this showing; nor has he shown a reasonable likelihood that the outcome of his trial would have been different if severance had been granted.

Finally, defendant claims trial counsel was ineffective because he failed to interview the State's key witness, Charlene Cole, prior to trial. However, following the motion for new trial, the trial court determined that despite trial counsel's numerous attempts to locate and interview the witness, she avoided him. Moreover, defendant has not shown a reasonable likelihood that the outcome of the trial would have been different if the witness had been interviewed. Thus, defendant has not met his burden under *Strickland*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 2010.

*Christopher S. Warren*, for appellant.
*Gregory W. Edwards, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.