**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 25, 2012**

# In the Court of Appeals of Georgia

A12A1270. GLAZE v. THE STATE.

PHIPPS, Presiding Judge.

Willie Glaze was convicted of rape, kidnapping, armed robbery, theft by taking (motor vehicle), and three counts of possession of a gun during the commission of a crime. Glaze appeals, challenging the sufficiency of the evidence and contending that he received ineffective assistance from his trial counsel. Finding no error, we affirm.

At trial, S. D. testified that on April 5, 1994, a little before 6:30 a.m., she stopped at a convenience store to buy coffee on her way to work. After she got back into her vehicle and drove away, she was about to make a turn when she heard from the back of the vehicle a voice instructing her to "keep going." Then S. D. saw the barrel of a gun protrude between the front bucket seats, "[f]rom behind the passenger's side" of the vehicle.

S. D. testified that the gunman told her to turn onto a driveway that led into the woods. There, the gunman ordered S. D. to "[c]ut the car off," and to exit the vehicle. S. D. testified that the gunman "grabbed [her] by the shoulder and pulled [her] up through [a] ditch and [they] walked on up through the woods." In the woods, the gunman asked S. D. whether she had any money. S. D. replied that she did, and the gunman, still pointing his gun at S. D., ordered her to give it to him. S. D. gave him the money. S. D. testified that the gunman then ordered her to "pull one leg out of [her] pants and keep one leg in." He ordered her to lie on the ground, and he inserted his penis into her vagina. Afterwards, the gunman ordered S. D. to disrobe and give him her clothes, which she did. He took her clothes and left in her vehicle.

Naked, S. D. walked to the road to get help. A passing motorist drove her to a police officer who was parked "just down the road." S. D. was taken to a hospital and a doctor examined her for evidence of sexual assault. Several hours after the incident, S. D.'s vehicle was located "around the corner from [the] convenience store" where S. D. had stopped that morning. Inside the vehicle were S. D.'s clothes that the gunman had taken with him.

S. D. testified that her assailant had a gun throughout the incident, and that she felt her life was threatened. S. D. did not get a good look at the perpetrator. She did, however, describe his race, and the coveralls he was wearing.

As part of the sexual assault examination, the doctor took swabbings from S. D.'s vaginal area. Sperm was detected in a vaginal swab taken from S. D. The sample was tested for DNA, and a male DNA profile was obtained. In June 1998, S. D.'s DNA profile and the DNA profile of the unknown male whose sperm was detected in the swab sample taken from S. D.'s vaginal area were entered into the Combined DNA Index System ("CODIS"), a national database of DNA profiles.

In December 2006, the CODIS administrator for the Georgia Bureau of Investigations Division of Forensic Sciences was conducting a routine search of the CODIS database and received information that the DNA profile from the 1994 incident possibly matched the DNA profile of Glaze. After the CODIS identification was obtained, the police arrested Glaze pursuant to a warrant and obtained a buccal swab from him for additional DNA testing. An additional swab was also taken from S. D. The new swabbings were tested and compared to the 1994 swab samples taken from S. D. Glaze's DNA profile obtained from the new sample matched the DNA

3

profile of the male whose sperm had been obtained in connection with the 1994 incident.

At trial, S. D. was shown a photograph taken from a surveillance video camera at the convenience store the morning of the incident. The photograph depicted a man whose clothing and race fit the description S. D. gave of her assailant. An investigator's testimony that the photograph was "grainy," making it "hard to see close facial features," was evident from the exhibits admitted at trial. And although S. D. did not say whether the individual in the photograph appeared to be her assailant, she identified the coveralls worn by the individual depicted in the photograph as the type and color of the coveralls her attacker wore. An investigator for the sheriff's department testified that his investigation revealed that Glaze had been in the county area where the incident occurred on the date of the alleged crime.

1. Glaze contends that the evidence was insufficient to support his convictions. He argues that he was never positively identified, but was identified only through DNA evidence, and that the DNA evidence by itself was insufficient to support his convictions or to exclude the possibility that he had consensual intercourse with S. D.

> On appeal of a criminal conviction, this Court's duty is to determine whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellant no longer enjoys the presumption of innocence. Moreover, the Court does not re-weigh the evidence or resolve conflicts in testimony, but rather defers to the jury's assessment of the weight and credibility of the evidence.[1]

"Under OCGA § 24-4-6, only when the evidence is entirely circumstantial must the evidence exclude every other reasonable hypothesis except that of the guilt of the accused."[2] Here, the evidence of Glaze's guilt consisted of a combination of circumstantial and direct evidence. There was DNA evidence and S. D.'s testimony regarding the nature of the attack and description of the attacker.[3] And although Glaze complains that he was never positively identified as the perpetrator, the store surveillance camera captured the image of an individual who wore clothing similar to that worn by S. D.'s attacker and who appeared to be the same race as the attacker.[4]

---

[1] *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007) (citations and punctuation omitted).

[2] *McKeehan v. State*, 274 Ga. App. 14, 15 (1) (616 SE2d 489) (2005) (citation omitted).

[3] See id.

[4] Glaze asserts that he did not fit S. D.'s description of her attacker because S. D. stated that her attacker was six feet to six feet one inch in height, and Glaze was

5

Additionally, there was evidence that Glaze was in the county area at the time of the incident. "[E]vidence other than the victim's identification of her attacker, including circumstantial evidence, may sustain a conviction for rape."[5] The credibility, truthfulness, and reliability of witnesses are matters within the province of the jury.[6]

Concerning Glaze's argument that the DNA evidence did not exclude the possibility that he had consensual intercourse with S. D., "[t]he testimony of a single witness is generally sufficient to establish a fact."[7] And the General Assembly long

---

five feet six inches in height. But evidence of Glaze's height was not adduced at trial. At the hearing on Glaze's motion for a new trial, Glaze testified that he was five feet six inches tall.

[5] *McKeehan*, supra (citing *Walker v. State*, 157 Ga. App. 728, 728-730 (1) (278 SE2d 487) (1981) (rape conviction affirmed where the only evidence as to identity of assailant was circumstantial, i.e., a telephone number the assailant gave the victim and a blue and white bandana the assailant wore)); see *Walker v. State*, supra, 282 Ga. at 406-408, n. 1 (evidence was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt of murder and rape where evidence of perpetrator's identity consisted of DNA evidence and evidence that at the time of the victim's death, the defendant frequently stayed at a home located only a block from where the victim's body was discovered, and the defendant had been observed in the area where the victim's body was discovered a few days after the victim's death, and nearly a month later, only 25 feet from where the victim's body had been found).

[6] See *Johnson v. State*, 273 Ga. 872, 874 (2) (548 SE2d 292) (2001).

[7] OCGA § 24-4-8.

ago removed the corroboration requirement from the rape statute.[8] To prove the offense of rape, the state must show that a defendant had "carnal knowledge of … a female forcibly and against her will."[9] S. D. testified that she lay on the ground because Glaze instructed her to do so; he had a gun in his hand, and she believed that he had the ability to kill her if she did not comply with his demands. "[L]ack of resistance, induced by fear, is not legally cognizable consent but is force."[10] S. D. testified also that Glaze's actions were against her will.

The evidence was sufficient for a rational trier of fact to find Glaze guilty beyond a reasonable doubt of the offenses charged.[11]

2. Glaze contends that he received ineffective assistance of counsel because his trial counsel did not "call any expert witness to rebut the state's DNA evidence."

---

[8] *Baker v. State*, 245 Ga. 657, 665-666 (5) (266 SE2d 477) (1980); OCGA § 16-6-1.

[9] OCGA § 16-6-1 (a) (1).

[10] *Curtis v. State*, 236 Ga. 362, 363 (1) (223 SE2d 721) (1976); *Ellis v. State*, _ Ga. App. _ (1) (c) (_ SE2d _) (Case No. A12A0232, decided June 25, 2012).

[11] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Ellis*, supra; *McKeehan*, supra; *Walker*, supra, 282 Ga. at 406-408.

To prevail on a claim of ineffective assistance of trial counsel under *Strickland v. Washington*,[12] a defendant must show that "counsel's performance was deficient and that the deficient performance so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[13] A defendant must overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct.[14] "The trial court's determination with respect to effective assistance of counsel will be affirmed unless its findings are clearly erroneous."[15]

"The decision whether to call an expert witness is a matter of trial strategy within the broad range of professional conduct afforded trial attorneys."[16] At the hearing on Glaze's motion for new trial, trial counsel testified that he and his co-counsel had hired an expert to examine the GBI results of the DNA analysis that

[12] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[13] *Johnson v. State*, 287 Ga. 767, 769 (2) (700 SE2d 346) (2010) (citations omitted).

[14] Id.; *Mobley v. State*, 271 Ga. 577, 578 (523 SE2d 9) (1999).

[15] *Johnson*, supra, 287 Ga. at 769 (2) (citation omitted).

[16] *Davis v. State*, 290 Ga. 584, 586 (2) (a) (723 SE2d 431) (2012) (citation omitted).

linked Glaze to the incident. Their expert concluded that "everything had been done correctly." Trial counsel further testified that "although [the expert] offered us some cross-examination tests, there was nothing we felt he could offer in testimony." Moreover, Glaze failed to show what favorable evidence would have been elicited if trial counsel had called an expert witness.[17] Accordingly, Glaze has failed to meet his burden of showing both deficient performance on the part of trial counsel, and prejudice arising from trial counsel's performance.[18]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[17] See *Hendricks v. State*, 290 Ga. 238, 241-242 (4) (b) (719 SE2d 466) (2011); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615-616 (458 SE2d 623) (1995).

[18] See *Hendricks*, supra; *Crawford v. State*, 314 Ga. App. 796, 799 (7) (a) (726 SE2d 58) (2012) (trial counsel's failure to call an expert witness on weapons was a tactical and strategic decision that could not form the basis for an ineffective assistance claim, where trial counsel testified at the motion for new trial hearing that he considered bringing in a weapons expert and spoke with different experts but did not call any to testify at trial because none of the information he received was favorable to the defense).