**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 4, 2012**

# In the Court of Appeals of Georgia

A12A1083. SMITH v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Melisssa Dale Smith was convicted of two counts of forgery in the first degree (OCGA § 16-9-1 (a) (2009)).[1] Smith filed a motion for new trial, which the trial court denied. On appeal, Smith contends that (1) the evidence was insufficient to sustain her convictions; (2) the trial judge improperly commented on the evidence; and (3) she received ineffective assistance of counsel.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to

---

[1] This statute was substantially amended by Ga. L. 2012, Act 709, § 3-5, which did not go into effect until July 1, 2012, after the offenses occurred in this case. Thus, this case is considered under the prior version of the statute. See Ga. L. 2012, Act 709, § 9-1 (a).

the guilty verdict." (Citation and punctuation omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

So viewed, the evidence shows that Smith and her co-defendant, Misty Allen,[2] had known each other for approximately nine years prior to the forgery incidents at issue in this case. As explained in more detail below, Smith and Allen were involved in a scheme whereby Smith provided Allen with identification and arranged for her to come cash stolen checks at a Wal-Mart store where Smith was employed as a customer service manager.

During trial, a bookkeeper for a printing and advertising company called Dixie Graphics testified that she had prepared a check made payable to Dixie Graphic's vendor, The Library Bindery Company. The bookkeeper placed the check in an envelope and put the envelope in her mailbox to go out for delivery. When the vendor contacted her about not receiving payment, she went online to view an image of the cashed check and discovered the inclusion of "c/o Darlene Lecroy" on the payee line along with "The Library Bindery Co." The bookkeeper had not included nor authorized the inclusion of "c/o Darlene Lecroy" as a payee on the check. The

___

[2] At the time of Smith's trial, Allen had already plead guilty to the charges brought against her in this case.

bookkeeper did not know anyone by the name of Darlene Lecroy. The bookkeeper's husband, who was a police officer, testified that several checks had been stolen from their mailbox, including the one made payable to The Library Bindery Company.

In May 2009, Allen went to the Wal-Mart store where Smith worked in order to cash a check from the account of Dixie Graphics and made payable to "The National Library Bindery Co. c/o Darlene Lecroy" in the amount of $1,662.75. Allen showed identification in the name of Darlene Lecroy. Allen had obtained Lecroy's identification card from Smith, who had retrieved it from the Wal-Mart lost and found department. The customer service associate at the service desk questioned the check, as it was against Wal-Mart policy to cash a multiple-party check. Upon Allen's indication that Smith would approve the check, however, the customer service associate sought out Smith. Smith provided her approval, and the customer service associate proceeded to cash the check. At trial, Smith admitted that she gave her approval to cash the multiple-party check despite it being against Wal-Mart policy. Smith and Allen later split the proceeds of the check evenly.

In approximately June 2009, Allen stole a checkbook from her stepfather and gave it to Smith. Allen subsequently met Smith in the Wal-Mart parking lot, where Smith gave Allen one of her stepfather's stolen checks. The check had already been

3

signed and made payable to "Darlene Lecroy" in the amount of $1,500. Smith told Allen to come back into the store and cash the check. After giving Smith "time to get situated inside," Allen went into the Wal-Mart store to the service desk and asked for Smith. According to Allen, Smith gave her approval to the customer service associate, who then proceeded to cash the check.[3] Allen was prompted to enter an identification number on a keypad at the service desk. Allen entered an identification number that had been previously given to her by Smith.[4] Smith and Allen again split the proceeds of the check evenly.

Allen's stepfather identified the above check as a true and correct copy of one that had been stolen from him, but stated that he had not signed it nor authorized

---

[3] According to the customer service associate, however, she cashed this second check without Smith's direct approval. She testified that because Smith had previously given her approval to cash Allen's multiple-party check, she assumed that Smith would have again provided her approval to cash the second $1,500 check.

[4] Appearing on the back of the check was a driver's license number belonging to a Shelby Brooks. Brooks was the ex-wife of Smith's husband and had had a contentious relationship with Smith for 13 years. According to a witness, Smith had plans to "get back at" Brooks. About one month prior to the forgery incident, Brooks had returned an item to Wal-Mart and had been required to provide her driver's license number. Brooks testified that Smith was at the service counter during the return and witnessed the entire transaction.

anyone to write the check on his account. He further testified that he did not know a Darlene Lecroy and would have no reason to write her a check.

1. Smith contends that the evidence was insufficient to sustain her convictions. We disagree. After viewing the evidence in the light most favorable to the prosecution, the relevant question on appeal is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

> A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing.

(Punctuation omitted.) OCGA § 16-9-1 (a) (2009).

Based upon the testimony of Allen, along with Allen's stepfather, the Wal-Mart customer service associate, the Dixie Graphics bookkeeper and her husband, Brooks, and Smith herself, the jury was entitled to conclude that Smith was guilty of forgery in the first degree as alleged in both counts of the indictment.

5

Smith nevertheless contends that there was insufficient evidence to convict her on the count of forgery that was based upon the $1,500 check from the account of Allen's stepfather. Smith argues that there was a failure of proof because the indictment improperly identified the check number as the bank routing number. To the extent Smith is arguing a fatal variance between the allegation in the indictment and the proof at trial, Smith's contention fails.

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

(Citation and punctuation omitted.) *McBride v. State*, 202 Ga. App. 556, 557 (415 SE2d 13) (1992). Here, the indictment sufficiently informed Smith that a check from the account of Allen's stepfather was the writing upon which that count of forgery was based. And as set forth above, the combined testimony of Allen, her stepfather, and the customer service associate sufficiently identified the forged check from the account of Allen's stepfather. Furthermore, given that the indictment was broad enough to encompass an act of forgery involving any check from the account of

Allen's stepfather, there is no danger that Smith could be prosecuted again for the same offense. Thus, "[t]he language in the indictment was sufficient to put [Smith] on notice as to the essential elements of the charged offense so as not to be taken by surprise, and [Smith] could not be prosecuted again for these offenses." (Citation and punctuation omitted.) Id. at 558.

Therefore, we reject any fatal variance claim and hold the evidence was sufficient to satisfy the standard set forth in *Jackson v. Virgina*.

2. Smith next contends that the trial judge improperly commented on the evidence. We disagree.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57.[5] "[H]owever, a trial court may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to

---

[5] Although defense counsel failed to object to the trial judge's comment, such failure did not waive the issue on appeal. See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010). In the context of OCGA § 17-8-57, the issue on appeal is simply whether there was a violation of the statute. See id.

ensure a fair trial to both sides." (Citation and punctuation omitted.) *Chambers v. State*, 313 Ga. App. 39, 41 (2) (720 SE2d 358) (2011).

Here, Smith raises issue with the below-emphasized comments by the trial judge, made during the testimony of the customer service associate who cashed Allen's checks:

[Prosecution:] So when you cashed these two checks that you say were approved by Ms. Smith -

[Defense counsel]: Objection, Your Honor. That was not the testimony.

. . .

THE COURT: *I think it's only the one [that] was directly approved by Ms. Smith.*

[Defense counsel]: Correct, Your Honor.

THE COURT: *[T]he first one.* After reviewing the trial transcript, we conclude that the trial judge's comments did not amount to an improper expression of opinion with regard to Smith's guilt or innocence or to what had or had not been proven. Significantly, a "trial judge may state his recollection as to some portion of the testimony without prejudice to the defendant." (Citation omitted.) *Blackburn v. State*, 131 Ga. App. 678, 680 (6) (206 SE2d 723) (1974). Here, the trial judge's comments were meant to clarify the prior testimony of the customer service

8

associate – that Smith had given her direct approval to cash only the first, multiple-party check – only after defense counsel objected to the State's mischaracterization of the customer service associate's previous testimony. Accordingly, the trial judge's comments in this case did not violate OCGA § 17-8-57.

3. Smith maintains that her trial counsel was ineffective because he failed to object to the trial judge's comments, impermissible bad character evidence, and the admission of photocopied checks rather than originals.

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LEd2d 674) (1984), a criminal defendant bears the burden of showing "that counsel's performance was deficient and that the deficient performance so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." (Citations omitted.) *Johnson v. State*, 287 Ga. 767, 769 (2) (700 SE2d 346) (2010). However, a court addressing the ineffective assistance issue is not required "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, supra, 466 U. S. at 697 (IV). "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. "The trial court's

determination with respect to effective assistance of counsel will be affirmed unless its findings are clearly erroneous." (Citation omitted.) *Johnson*, supra, 287 Ga. at 769 (2).

(a) Smith's contention that her trial counsel was ineffective for failing to object to allegedly improper comments by the trial judge is without merit. As discussed in Division 2 above, the trial judge's comments did not amount to a violation of OCGA § 17-8-57. Thus, there would have been no merit to trial counsel's objection, and failure to raise a non-meritorious objection does not constitute ineffective assistance of counsel. Cf. *Jones v. State*, 279 Ga. 854, 856 (2) (a) (622 SE2d 1) (2005).

(b) Smith also contends that her trial counsel was ineffective for failing to object to bad character evidence in the form of witness testimony regarding Smith's drug use. Specifically, Allen testified several times that she and Smith would use the money from the checks to buy "dope," and that she and Smith hung out together only when they were getting high. Another witness, Allen's girlfriend, also testified that Smith was using drugs.

At the hearing on the motion for new trial, trial counsel testified that he did not object because he did not find the witnesses credible. Cf. *Ford v. State*, 290 Ga. 45, 49 (5) (c) (717 SE2d 464) (2011) ("At the hearing on the motion for new trial,

10

defense counsel testified she did not object because she did not find the witness to be credible and hoped that the witness's testimony would show the jurors he was not credible."). "Assuming that the testimony placed [Smith's] character in issue, the decision not to object to such testimony is a matter of trial tactics, and, as a general rule, matters of reasonable trial tactics do not amount to ineffective assistance of counsel." (Citations and punctuation omitted.) Id.

(c) Finally, Smith contends that trial counsel was ineffective for failing to assert a best evidence objection to the photocopied checks admitted into evidence. Pretermitting whether a best evidence objection had merit, Smith's ineffective assistance claim on this ground fails because she cannot show prejudice. See *Mayberry v. State*, 301 Ga. App. 503, 509 (4) (c) (687 SE2d 893) (2009). Smith did not show that if trial counsel had made such an objection that the State could not have introduced the original writings or satisfactorily accounted for their absence. See id.; *Garrett v. State*, 285 Ga. App. 282, 287 (5) (c) (645 SE2d 718) (2007). "[Smith] has failed to demonstrate [to] a reasonable probability that, but for counsel's failure to assert a best evidence rule objection, the trial's result would have been different." (Citation and punctuation omitted.) *Garrett*, supra, 285 Ga. App. at 287 (5) (c);

11

accord *Mayberry*, supra, 301 Ga. App. at 510 (4) (c). Accordingly, the jury verdict will stand.

*Judgment affirmed. Ray and Branch, JJ., concur*.