**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 8, 2019**

# In the Court of Appeals of Georgia

A19A0080. SULLINS v. THE STATE.

REESE, Judge.

A jury found Brandon Sullins guilty of committing an aggravated assault by shooting a handgun toward a woman while he was riding as a passenger in a car.[1] He appeals from the trial court's denial of his motion for new trial, arguing that the evidence was insufficient to support his conviction, that the trial court erred in denying his request for a continuance, and that his trial counsel provided ineffective assistance. For the reasons set forth, infra, we affirm.

---

[1] See OCGA § 16-5-21 (a) (4) ("A person commits the offense of aggravated assault when he or she assaults [a] person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.").

Viewed in the light most favorable to the jury's verdict,[2] the evidence presented at trial showed the following facts. At around 10:30 p.m. on June 12, 2016, the Appellant exchanged some text messages with an acquaintance, Terrie Mitchell. Based on the Appellant's messages, Mitchell became concerned that the Appellant was coming to her apartment and "[t]hat there were going to be problems." Mitchell asked the Appellant not to "do anything crazy because [her] kids" were with her at the Floyd County apartment she shared with her sister, Paula Gonzalez. Shortly thereafter, Mitchell and Gonzalez were standing outside of their apartment with some of their children when a car drove by slowly and they heard a gunshot coming from the vehicle. Mitchell saw the arm of the passenger in the car extending out of the window, and Gonzalez testified that she saw the passenger stick his hand out of the window and shoot a handgun toward her, Mitchell, and their children. Gonzalez also testified that the passenger who shot the gun was the Appellant.[3]

---

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[3] In addition, while speaking with an investigator from the Floyd County District Attorney's Office just before the trial began, Gonzalez identified the Appellant as the shooter in this case, telling the investigator that she saw him at the time of the shooting and recognized his face tattoos.

The car sped away after the gunshot. Mitchell immediately called 911; she also texted the Appellant and asked him "why he did it." The Appellant responded that he "didn't do it."

A neighbor also saw the vehicle drive slowly past the apartments, and she heard the gunshot. The neighbor testified that the gunshot definitely came from the vehicle and that, right after she heard the gunshot, she heard Mitchell and Gonzalez call out the Appellant's name.

A responding police officer spoke with both Mitchell and Gonzalez, who told him that the Appellant drove by their apartment and shot at them. According to the officer, both Mitchell and Gonzalez recognized the passenger in the car as the Appellant and were "positive[ ]" that he was the shooter. The officer described Mitchell as being "real[ly] hysterical" and "showing signs that she was just scared for her life." Mitchell and Gonzalez also showed the officer the place where the Appellant was when he shot at them from the car, and another officer found a spent shell casing from a handgun on the ground at that spot.

Following his arrest for aggravated assault, the Appellant was incarcerated in the county jail pending trial. About two weeks before the trial was set to begin, Mitchell and Gonzalez met with an investigator from the Floyd County District

3

Attorney's Office. Mitchell and Gonzalez told the investigator that the Appellant had

called one of their friends while they were sitting next to the friend. According to the

investigator, Mitchell and Gonzalez overheard portions of the phone call, during

which the Appellant said something that concerned them and made them feel

"threatened." Based on that information, the Appellant's phone calls from the jail

were monitored and recorded, and the investigator downloaded the recordings that

were relevant to the instant case. Redacted versions of the recordings were played for

the jury at trial.[4]

The recordings show that, in all but one of the phone calls the Appellant made

from jail between February 24 and March 2, 2017, the Appellant used other inmates'

---

[4] After the Appellant's trial counsel expressed concern that, during some of the phone calls, the Appellant may have referred to other crimes he had committed and stated that he had previously been incarcerated, the State redacted the recordings to eliminate such references. While the recordings were being played for the jury, however, the Appellant told his trial counsel that, in one of his phone calls, he was referring to a different crime than the one at issue. Trial counsel immediately objected, and the jury was excused. After discussing the issue with the parties, the court stated that the recording appeared to refer only to the instant crime. The court allowed trial counsel to confer with the Appellant, and then agreed to give a limiting instruction to the jury, telling the jurors that, if the recordings mentioned any matter not related to the incident at issue, they should "totally ignore it[.]"

Notably, the recordings in the appellate record do not appear to be the redacted versions that were played at trial. However, this Court has not considered any references to other crimes when addressing the issues raised in this appeal.

accounts to call different individuals.[5] According to the investigator, the phone call that Mitchell and Gonzalez had told him about, and which prompted him to monitor the Appellant's phone calls, occurred on February 24. During a phone call on February 25, the Appellant talked to a woman whom he had never met, and he told her his name was "Brandon Sullins" (even spelling out his last name). The Appellant told the woman, "Amber," that he had lied to his lawyer, claiming he had an alibi, and he convinced "Amber" to make up an alibi for him for the night of June 12, 2016, when the shooting in this case had occurred.[6] The Appellant also spoke to other women over the next week, and specifically asked one woman, "Crystal," to "coach" "Amber" and take her to court to tell his lawyer about the alibi. The Appellant also asked "Crystal" to go to court and provide an alibi for him.

---

[5] The investigator testified that, even though the Appellant was using other inmates' accounts to make the calls, he had heard the Appellant speak on several occasions and recognized his voice. In addition, the Appellant identified himself as "Brandon Sullins" in some of the calls, and some of the call recipients called him "Brandon." Moreover, when one of the call recipients expressed concern about discussing an alibi and making plans on the phone, the Appellant assured her that he was using another inmate's account, so the jail had no reason to record the call.

[6] The Appellant ultimately decided not to call an alibi witness to testify at his trial.

5

During another call, the Appellant said that he had tried to pay Mitchell and Gonzalez $1,000 so they would not testify against him, but they refused because they had received subpoenas from the State. The Appellant also tried to convince his mother to help sneak money to him in the jail, but she refused, so the Appellant had another inmate convince someone to do it, instead. And, finally, in a call on February 27, the Appellant tried to call "Crystal," but an unidentified man answered the phone and, during their conversation, the Appellant admitted committing the instant crime.

Following his conviction for aggravated assault, the Appellant filed a motion for new trial, which the trial court denied. This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[7] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[8]

---

[7] 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[8] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

"The standard of *Jackson v. Virginia*[9] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[10] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that the State presented insufficient evidence to show that he discharged the handgun "toward" Mitchell, as alleged in the indictment.[11] He argues that the trial testimony of Mitchell and Gonzalez about what they saw during the incident was inconsistent and that their trial testimony conflicted with what they told the officer shortly after the shooting.

The trial transcript shows, however, that Gonzalez testified at trial that the Appellant shot his handgun toward her, Mitchell, and their children, who were all standing outside the apartment.[12] To the extent that other evidence conflicted with

---

[9] 443 U. S. at 319 (III) (B).

[10] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

[11] The indictment alleged that the Appellant "discharge[d] a firearm from within a motor vehicle toward a person, to wit: TERRIE ANNETTE MITCHELL[.]" See also OCGA § 16-15-21 (a) (4) (criminalizing the discharge of a firearm "from within a motor vehicle toward a person or persons[ ]").

[12] See *Walker v. State*, 295 Ga. 688, 691 (2) (763 SE2d 704) (2014) (The State presented direct evidence of the appellant's guilt, including the testimony of two

7

Gonzalez's testimony, such conflicts or inconsistencies were solely for the jury to resolve.[13]

In addition, there was circumstantial evidence to support a finding that, when the Appellant shot a handgun out the window while riding in a car outside Mitchell's apartment, he shot "toward" Mitchell.[14] Such evidence included Mitchell's testimony that she had been texting with the Appellant and that, based on his text messages, she was afraid that he was going to come to her apartment and "[t]hat there were going to be problems." Circumstantial evidence that the Appellant was shooting "toward"

---

eyewitnesses and of the inmate to whom the appellant admitted committing the drive-by murder.); *Cobb v. State*, 268 Ga. App. 66, 68 (601 SE2d 443) (2004) (The State's direct evidence included eyewitness identification testimony and the appellant's admission that he committed the crime.).

[13] See *Hughes v. State*, 323 Ga. App. 4, 6-7 (1) (746 SE2d 648) (2013) (Although the appellant claimed that the State's case was weak and his testimony contradicted the State's evidence, any evidentiary weaknesses, conflicts, or inconsistencies in the trial evidence were for the jury to resolve. "We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.") (punctuation and footnote omitted); see also *Walker*, 295 Ga. at 690 (1) (b) (Whether certain witnesses were more believable than other witnesses is "a matter to be decided by the jury that saw and heard the testimony, not by an appellate court reviewing a transcript.") (citation omitted).

[14] The trial court instructed the jury on both direct and circumstantial evidence.

Mitchell also included what Mitchell and Gonzalez told the police officer minutes after the shooting and the officer's description of Mitchell's demeanor at that time.

Thus, we conclude that there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the Appellant discharged a handgun toward Mitchell and that he was guilty of aggravated assault, as indicted.[15]

2. The Appellant contends that his attorneys provided ineffective assistance by their failure to raise a "best evidence" objection to the witnesses' testimony about the content of text messages he sent to Mitchell shortly before the drive-by shooting occurred. He argues that the testimony was inadmissible because the State failed to produce an original or duplicate copy of the text messages, pursuant to OCGA §§ 24-10-1002, 24-10-1003, and 24-10-1004.[16]

---

[15] See *Walker*, 295 Ga. at 690 (1) (b).

[16] See OCGA §§ 24-10-1002 ("To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required."); 24-10-1003 ("A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original."); 24-10-1004 ("The original shall not be required and other evidence of the contents of a writing, recording, or photograph shall be admissible if: (1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; (2) No original can be obtained by any available judicial process or procedure; (3) At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[17] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [The appellate court] accept[s] the trial court's factual findings and credibility determinations unless clearly erroneous, but . . . independently appl[ies] the legal principles to the facts.[18]

Pretermitting whether a "best evidence" objection would have had merit and whether trial counsel's failure to raise such an objection constituted deficient

---

would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or (4) The writing, recording, or photograph is not closely related to a controlling issue.").

[17] *Strickland v. Washington*, 466 U. S. 668, 690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984).

[18] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

performance,[19] we agree with the trial court's conclusion that the Appellant has failed to show that he was prejudiced by the lack of an objection. Specifically,

[the Appellant] did not show that[,] if trial counsel had made such objection[,] the [S]tate could not have introduced the original [text messages] or satisfactorily accounted for their absence. [The Appellant] has thus failed to demonstrate to a reasonable probability that, but for counsel's failure to assert [a] best evidence rule objection[ ], the trial's result would have been different.[20]

Moreover, one of his trial attorneys[21] testified during the motion for new trial hearing that, even if an objection had been raised and the testimony had been excluded, he did not think that the exclusion would have made any difference on the outcome of the trial. He also testified that he did not believe the testimony about the

---

[19] See *Veasley v. State*, 312 Ga. App. 728, 731 (2) (719 SE2d 585) (2011) ("When a defendant fails to establish that his counsel's performance prejudicially affected his defense, we need not evaluate whether counsel's performance was deficient, because failure to satisfy either prong of the *Strickland v. Washington* standard is fatal to an ineffective assistance claim.") (citations omitted).

[20] *Crankshaw v. State*, 336 Ga. App. 700, 703 (3) (c) (786 SE2d 245) (2016) (citation and punctuation omitted). See *Smith v. State*, 317 Ga. App. 801, 806 (3) (c) (732 SE2d 840) (2012) (accord); see also *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012) (Trial counsel's failure to make a meritless or futile objection or motion does not constitute ineffective assistance.).

[21] The Appellant did not call his other trial attorney to testify during the hearing.

text messages had been "fatal" to the Appellant's defense, which was based on an argument that the Appellant was not present when the shooting took place.

We conclude that, given the overwhelming evidence presented, including Mitchell's and Gonzalez's eyewitness testimony and Gonzalez's statements to the police officer and investigator identifying the Appellant as the shooter, as well as the Appellant's numerous inculpatory statements during his phone calls from jail, the trial court did not err in finding that the Appellant failed to demonstrate the requisite prejudice to prevail on this ineffective assistance claim.[22]

3. The Appellant contends that the trial court abused its discretion in refusing to grant a continuance to allow him and his trial counsel to review the recordings of his jail phone calls, because the State did not provide the recordings to the defense until two or three days before trial. He claims that one of the recordings *might* have referred to his involvement in a different shooting than the one at issue in this case,[23]

---

[22] See *Crankshaw*, 336 Ga. App. at 703 (3) (c); *Smith*, 317 Ga. App. at 806 (3) (c).

[23] We note that the Appellant's brief does not identify any specific statement in the recordings that, in fact, referred to another crime. Instead, he argues that "the tapes contained discussion of a shooting, that a jury *could arguably have concluded* was a different incident than the one for which [he] was being tried." (Emphasis supplied.)

and he argues that those portions should have been redacted before the jury heard the recordings. According to the Appellant, he could have identified those portions prior to trial if he had had the opportunity to do so, but the court's denial of a continuance precluded that option and resulted in the presentation of prejudicial evidence to the jury. This contention lacks merit for several reasons.

"All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require."[24]

> In reviewing a trial court's denial of a motion for a continuance, this Court will not reverse a trial court's decision on a motion for continuance except upon a clear abuse of the trial court's discretion. Moreover, to be entitled to a new trial based upon the denial of his motion for a continuance, the defendant has the burden to show that he was harmed by that denial.[25]

In this case, as shown above, the Appellant made numerous phone calls from jail between February 24 and March 2, 2017, and an investigator from the district attorney's office obtained recordings of the phone calls. According to one of the

---

[24] OCGA § 17-8-22.

[25] *Williams v. State*, 317 Ga. App. 248, 256 (3) (730 SE2d 726) (2012) (citation and punctuation omitted).

Appellant's trial attorneys, he and his co-counsel received the recordings from the State a few days before trial, which began on March 6, 2017, just four days after the Appellant made the last recorded phone call.[26]

The Appellant's attorneys promptly reviewed the recordings and discussed how the recordings might affect their trial strategy. Then, wanting to review the recordings with the Appellant before trial, both of the Appellant's attorneys went to the jail to meet with him, but the Appellant cursed at them and told them that he was not going to have anything to do with them, that they should leave, and that they were fired. The Appellant also notified the attorneys before trial that he believed he was not being properly represented in this case and that he was requesting a new public defender to represent him at trial.

Thus, on March 6, the first day of trial, the Appellant's attorneys asked the trial court to remove them from the case, telling the court about their encounter with the Appellant at the jail and that they had also tried to meet with the Appellant earlier that morning (March 6), but the Appellant had been "accusatory and downright belligerent" toward them and had refused to assist them in preparing for his defense.

---

[26] There is no evidence that the State intentionally withheld the recordings from trial counsel or otherwise delayed their production.

The trial court denied the attorneys' request to withdraw from the case, and, noting that the case had already been continued several times, informed the parties that it was not going to grant a continuance.[27]

However, the court told the Appellant that he would have the opportunity to speak privately with his attorneys after the jurors were chosen, and the Appellant agreed to that plan. The trial transcript shows that the Appellant and his attorneys were able to confer in private after jury selection, as promised, as well as during the trial's lunch break.

---

[27] The record is unclear as to whether the Appellant's trial attorneys actually requested a continuance so that they could review the recordings with the Appellant. Regardless, for the purposes of this appeal, we will address this issue as if the attorneys had, in fact, moved for a continuance and the trial court had denied it.

On a related note, in footnote 1 on page 15 of the Appellant's brief, the Appellant states that, if his attorneys' request for a continuance "was not sufficiently clear and unambiguous" to preserve this issue on appeal, then the failure to request a continuance constituted ineffective assistance of counsel. This ineffectiveness claim is moot, however, given our decision to address the denial of a continuance on its merits, as opposed to ruling that it was waived by counsel.

And, even if the ineffectiveness claim was not moot, it would be deemed waived or abandoned. See *Manley v. State*, 287 Ga. App. 358, 360 (4) (651 SE2d 453) (2007) (An appellant cannot expand his enumerated errors on appeal through argument in his brief.); Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.").

(a) Turning to the merits of this alleged error, it is undisputed that neither the State nor the Appellant opted into the reciprocal discovery provisions of OCGA § 17-16-1 et seq.[28] Thus, the ten-day time requirement of OCGA § 17-16-4 (a) (1)[29] did not apply in this case.[30] To the extent the Appellant suggests that the recordings should have been excluded in their entirety because the State violated that provision, such assertion lacks merit.

---

[28] See *Baker v. State*, 238 Ga. App. 285, 286 (1) (518 SE2d 455) (1999) ("A defendant who opts into the reciprocal discovery statute is entitled to, among other things, pretrial discovery of any witness statements in the State's possession, certain statements of the defendant, and the defendant's criminal history. The defendant is also entitled to review and copy any documents or other items in the State's possession, including scientific reports, which the State intends to use as direct or rebuttal evidence. In return for this entitlement, the defense is required, among other things, to provide reciprocal discovery of documents and items in its possession and to provide discovery regarding any alibi defense.") (citations and punctuation omitted).

[29] OCGA § 17-16-4 (a) (1) provides, in relevant part, as follows: "The prosecuting attorney shall, no later than ten days prior to trial, or at such time as the court orders, disclose to the defendant and make available for inspection, copying, or photographing . . . the substance of any . . . relevant written or oral statement made by the defendant while in custody, whether or not in response to interrogation."

[30] See *Wright v. State*, 226 Ga. App. 848, 850 (4) (487 SE2d 405) (1997) (OCGA § 17-16-2 (a) requires a defendant to provide "written notice to the prosecuting attorney that such defendant elects to have this article apply to the defendant's case." Absent such notice, the provisions of OCGA § 17-16-4 (a) do not apply.) (punctuation and footnote omitted); see also *Hall v. State*, 282 Ga. App. 562, 564 (2) (639 SE2d 341) (2006) (physical precedent only) (accord).

16

Regardless, as the trial court found, even if the reciprocal discovery requirements applied in this case, the State complied with its obligations under OCGA § 17-16-4 (c) by promptly providing the newly discovered evidence to the Appellant's trial counsel.[31]

(b) As to the Appellant's argument that he was prejudiced by the trial court's denial of a continuance because it prevented him from reviewing the recordings and discussing them with his attorneys prior to trial, the record belies this contention. As shown above, the Appellant's attorneys went to the jail so the Appellant could listen to the recordings and discuss how to address the evidence at trial, but the Appellant not only refused to do so – he fired the attorneys and told them to leave. Thus, the Appellant waived his right to review the recordings before trial by refusing to do so when he had the opportunity. It necessarily follows that the prejudice claimed by the Appellant, i.e., his loss of a chance to review the recordings and discuss them with his attorneys in order to prevent portions of his phone calls from being played to the jury, was solely attributable to the Appellant.

---

[31] OCGA § 17-16-4 (c) provides as follows: "If prior to or during trial a party discovers additional evidence . . . which is subject to discovery or inspection under this article, such party shall promptly notify the other party of the existence of the additional evidence or material and make this additional evidence or material available as provided in this article."

17

Further, during the new trial hearing, one of the Appellant's attorneys testified that he and his co-counsel had reviewed the recordings prior to trial and were prepared to address them at trial, and, therefore, he did not think that he had a legal basis to ask for a continuance. He also testified that having additional time before trial pursuant to a continuance would not have benefitted the Appellant, admitting that there was no defense to what the Appellant said during the phone calls. Thus, the only available option was to try to keep any references to other crimes or the Appellant's prior incarcerations away from the jury, and, as shown above,[32] the Appellant's attorneys raised the issue at the beginning of the trial, which resulted in the State redacting such references from the recordings subsequently played to the jury. Finally, to the extent the jury may have heard the Appellant referring to a different shooting during one of the phone calls, the court instructed the jury to disregard such statement.

Consequently, pretermitting whether a continuance was warranted under the circumstances presented, we agree with the trial court's conclusion that the Appellant

[32] See footnote 4, supra.

failed to meet his burden of showing any prejudice that resulted from the denial of a continuance.[33]

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[33] See *Williams*, 317 Ga. App. at 256 (3); see also *Columbus v. State*, 270 Ga. 658, 665 (4) (513 SE2d 498) (1999) (The appellant failed to show that the trial court abused its discretion in denying his motion for a continuance and that he was harmed thereby.).