**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 8, 2020**

# In the Court of Appeals of Georgia

A20A0299. ALLEN v. THE STATE.

REESE, Presiding Judge.

After a jury found William Allen, Jr., guilty of aggravated assault and possession of a knife during the commission of a crime,[1] the Superior Court of Richmond County denied Allen's amended motion for a new trial. Allen appeals, arguing that he received ineffective assistance of counsel and that the trial court abused its discretion in denying his motion for a mistrial. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence presented at trial showed the following facts. In March 2017, Allen was living in an Augusta

---

[1] See OCGA §§ 16-5-21 (a) (2); 16-11-106 (b) (1).

[2] See *Sullins v. State*, 350 Ga. App. 83, 86 (828 SE2d 142) (2019).

apartment with his girlfriend ("J. C."), his mother, and his uncle . On the evening of March 22, 2017, following an argument, Allen obtained a knife from the kitchen and stabbed J. C. several times in the abdomen. At some point, the blade, which was longer than three inches, broke apart from the handle. Allen's uncle heard the commotion, came into the living room, and pulled Allen off of J. C. Allen told his mother, who had also come into the room, "'If I'm going to jail, . . . I'm going for something.'"

Allen ran out of the apartment, and Allen's mother called 911. Responding officers retrieved the broken handle and blade from the apartment, and paramedics treated J. C.

Allen moved in limine to exclude, inter alia, any evidence regarding J. C.'s claim that the attack had resulted in the death of her unborn "child(ren)." Because the State had not secured the presence of J. C. on the morning of trial, the trial court provisionally granted the motion. However, the trial court ruled that the State could present evidence that J. C. was pregnant if the State first laid a foundation on the basis of the witness's knowledge. In other words, evidence of the pregnancy could not simply be hearsay testimony.

2

The State called Allen's mother and uncle to testify, as well as the responding officer and a forensic biologist from the Georgia Bureau of Investigation crime lab. Then, outside the presence of the jury, the prosecutor informed the court that he wanted to play a five-minute audio clip from Allen's uncle's recorded statement to the investigating officer (who had passed away prior to trial). Mindful of the motion in limine, the parties agreed to starting and stopping points on the recording. Because there had been no reference yet to J. C.'s pregnancy, Allen's trial counsel advised the court that the parties had also agreed to omit an 18-second portion where "[i]t is said, 'I don't know how far along she is. Her stomach is pretty big.'"

However, the jury heard the following comments by Allen's uncle, which is on the recording 12 seconds prior to the agreed-upon stopping point: "The two babies in her stomach is his. He's the daddy. You know what I'm saying? That mean he trying to kill her and the kids." Allen's trial counsel immediately objected. After an initial bench conference, the trial court sent the jurors home for the day. Although the court initially expressed its opinion to the attorneys that the publication was a "blatant," although unintentional, violation of the motion in limine, the court later recalled that it had only excluded evidence that J. C. "was pregnant and had lost the fetuses[.]"

3

The court added, "[t]here is a compelling argument that the fact that she is pregnant is merely intrinsic[3] to the overall pattern of the facts of the case, and what [Allen's] intent was or not[.]" "[T]he State could infer that his actions, if proven, were more reckless, given the pregnancy[ and] even explain the stabbing as to why . . . it was in the stomach."

The court then questioned the attorneys as to whether its conditional ruling excluding evidence of the pregnancy impeded how they would have normally examined a witness. The prosecutor responded that he made a tactical decision to avoid the topic, and Allen's attorney was not going to bring it up if the State did not.

When the trial resumed the following morning, the court denied the motion for mistrial but granted the defense objection to the evidence because the appropriate foundation had not been laid. Because the State had still not located J. C., the court allowed the parties to voir dire Allen's uncle and mother and the responding officer regarding their knowledge of the pregnancy. The officer testified that he observed

---

[3] See *Fleming v. State*, 306 Ga. 240, 244-245 (3) (a) (830 SE2d 129) (2019) ("[E]vidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Intrinsic evidence must also satisfy OCGA § 24-4-403.") (citation and punctuation omitted).

J. C. with her shirt pulled up, that she appeared to be pregnant, and that she confirmed her pregnancy to the paramedics when they arrived.

The jury returned, and the trial court advised the jurors that it had sustained the objection made during the playing of the audio recording the day before, "and based upon that, the State has elected to recall a witness." The officer then testified that, based on his observations, J. C. appeared to be pregnant, and that she told paramedics "'I'm pregnant and he stabbed me in my stomach.'"

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial."[4] With these guiding principles in mind, we turn now to Allen's claims of error.

1. Allen first argues that his trial counsel was ineffective in failing to properly investigate and prepare for trial. Although acknowledging that he did not raise the issue of ineffective assistance of counsel in the amended motion for new trial, even though he was represented by new counsel, Allen notes that the amended motion did include a prayer for "'such other and further relief as . . . just and appropriate.'"

---

[4] *Grissom v. State*, 296 Ga. 406, 414 (6) (768 SE2d 494) (2015) (citation and punctuation omitted).

5

"Because [Allen] failed to raise the claim at the earliest practicable moment, he failed to preserve this claim for appellate review."[5] As Allen appears to concede, a general prayer for "other" relief does not suffice, especially where, as here, he waived a hearing on the amended motion.[6]

2. Allen contends that the trial court abused its discretion in denying his motion for a mistrial because "[n]o curative instruction or lack thereof could remove the taint once the jurors heard what they heard [from Allen's uncle's recorded interview] in the manner they heard it."

As the trial court found in its order denying the motion for mistrial, there was no violation of the ruling on the motion in limine, which "related to the possible termination of the victim's pregnancy due to the attack and was not addressed to the

---

[5] *Golson v. State*, 306 Ga. 101 (2) (829 SE2d 74) (2019) (citation and punctuation omitted).

[6] See *Swint v. State*, 279 Ga. App. 777, 778-779 (1) (632 SE2d 712) (2006) ("[A]n attorney who is appointed to replace trial counsel before the ruling on [a motion for new trial] should raise the issue in an amended motion for new trial and request a hearing on the amended motion; otherwise, he risks waiving the issue.") (citation and punctuation omitted).

fact that the victim was pregnant at the time of the attack." Allen thus "makes no showing that a mistrial was required to preserve his right to a fair trial."[7]

The trial court did sustain Allen's objection to the admission of the evidence as no foundation had been laid to explain how Allen's uncle was aware that J. C. was pregnant at the time of the attack. The State then introduced evidence from the responding officer regarding the pregnancy after laying a foundation based on the officer's own observations and under the medical treatment exception to the rule against hearsay.[8]

"In reviewing the trial court's decision, this court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in

---

[7] *Abney v. State*, 306 Ga. 448, 453 (2) (831 SE2d 778) (2019).

[8] See OCGA §§ 24-7-701 (a) ("If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are: (1) Rationally based on the perception of the witness; (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702."); 24-8-803 (4) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[.]").

dealing with the impropriety."[9] In light of the foregoing, the trial court did not abuse its discretion in concluding that the inadvertent publication of a limited portion of the recording did not infringe upon Allen's right to a fair trial.

*Judgment affirmed. Markle and Colvin, JJ., concur*.

---

[9] *Jones v. State*, 251 Ga. App. 285, 287 (2) (a) (554 SE2d 238) (2001).