## 44351. PRINCE v. THE STATE.
(355 SE2d 424)

GREGORY, Justice.

Deryl Paul Prince was convicted of felony murder and armed robbery. He was sentenced to life imprisonment.[1] We affirm.

On March 13, 1986, James Holland walked from his cousin's house to a nearby convenience store. In his pocket he carried twelve

---

[1] The crime was committed on March 14, 1986. Prince was arrested on March 27, 1986. He was indicted on June 26, 1986. Prince was convicted of felony murder and armed robbery on August 14, 1986. The transcript was certified by the court reporter on February 6, 1987. The case was docketed in this court on February 12, 1987, and submitted on briefs for decision on March 31, 1987.

$100 bills. Holland called a cab from the store. He also tried to buy beer and displayed his money. The store's clerk told Holland he must wait for other purchases before he could make change for the $100 bill. During this time, Prince and Michael England entered the store. They had been riding in a car owned by Prince's mother. Prince and England agreed to give Holland a ride and the three left the store together. The next morning Holland's body was found in a parking lot two miles from the store. Medical evidence indicated he died from two large lacerations to the head. His body appeared to have been turned over and his pockets were turned inside out.

On March 27, 1986, Prince and England were arrested. They were jointly tried for the murder of Holland.

At trial, England testified that he had been driving when the men left the store. Holland was also in the front seat and Prince was seated behind Holland. England said Holland told them he carried a gun in his boot because of problems with police. According to England, Holland reached for his boot. England hit Holland several times in the face with his elbow and Prince then restrained Holland by holding a tire iron over his neck. When England pulled into the parking lot of the Clarksdale Community Center, Holland was dragged out of the car. England said he hit Holland in the head with the tire iron. England claimed Prince then went through Holland's pockets, found the money and divided it.

Prince testified that Holland had become belligerent in the car and had threatened to shoot them. He said he restrained Holland by his collar but denied using a tire iron. Prince claimed England hit Holland and went through his pockets. Prince did admit accepting a share of the $1,200.

Police found no gun on the victim or at the crime scene. Holland's cousin testified that Holland was not known to carry a gun.

William Brown, a friend of Prince, later saw him with five $100 bills. Prince asked Brown to help him dispose of his mother's car. On March 20, 1986, England and Prince set fire to the car and rolled it into Sweetwater Creek. The next day, Prince reported the car as stolen.

1. Prince contends the trial court erred in denying his motion for directed verdict on the armed robbery count. He claims the evidence indicates Holland's money was taken only as an afterthought to the killing. The gist of his argument is that since the victim was dead or unconscious when the money was taken, the theft occurred without benefit of force or fear which is the essence of armed robbery as defined in OCGA § 16-8-41.

Even accepting Prince's argument that there was no evidence of an intent to rob Holland before the killing, this argument has been previously rejected in *Young v. State*, 251 Ga. 153 (3) (303 SE2d 431)

(1983). See also *Davis v. State*, 255 Ga. 588 (3b) (340 SE2d 862) (1986).

2. We have reviewed all the evidence in light of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and find in the light most favorable to the jury's verdict a rational trier of fact could have found Prince guilty of felony murder and armed robbery beyond a reasonable doubt.

3. Prince contends the trial court erred in denying his right to cross-examine a police officer concerning statements his co-defendant allegedly made to police before the trial.

When Prince's counsel sought to cross-examine the detective concerning the statements, the State objected on hearsay grounds. Prince's counsel argued the statement was admissible under OCGA § 24-3-2, which allows certain evidence to be admitted to explain conduct or ascertain motive involved in a legal investigation. The trial court correctly rejected Prince's argument on this ground, and sustained the State's objection.

Prince now argues the hearsay statements were admissible as prior statements by an in-court witness as considered by this court in *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982) and *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). However, this issue was not raised at trial and we will not consider it for the first time on appeal. *White v. State*, 255 Ga. 210 (1) (336 SE2d 777) (1985); *Brooker v. State*, 164 Ga. App. 775 (2) (298 SE2d 48) (1982).

4. Prince contends the trial court erred in not giving the jury curative instructions after a witness violated the rule of sequestration. Prince also contends the State erred in reading law to the jury concerning the rule.

(a) During the presentation of its case, the State called the clerk of the convenience store. It was determined that the clerk had been present in the courtroom for some time and violated the rule of sequestration. Prince sought to bar the clerk from testifying. In the alternative, Prince asked that the jury be instructed that the violation of the rule had affected the witness' credibility. The trial court then informed the jury as to the confines of the rule of sequestration. The court also stated that a violation of the rule goes to the credibility of the witness rather than the admissibility of the testimony. The court then instructed the jury briefly on credibility and indicated more detailed instructions on the issue of credibility of witnesses would be given at the end of the trial. The trial court did in fact give an appropriate charge on the issue of credibility at the end of the trial.

We construe Prince's contention that the trial court did not give a curative charge on violation of the sequestration rule to be that the trial court did not mention the rule again when instructions on credibility were given at the end of trial. But under these circumstances we

find the trial court gave adequate curative instructions and that no error exists.

(b) We also find no merit in the contention that the State read law to the jury. As described in *Conklin v. State*, 254 Ga. 558 (10a) (331 SE2d 532) (1985), "reading law" is a practice by which counsel at the commencement of closing arguments acquaints the court with principles of law that might thereafter be given in a charge. In all practicality, the practice is a means by which counsel can present to the jury principles of law since the law is read before the jury at a time when the court has already determined what is intended to charge.

In the instant case, the issue of violation of the rule of sequestration arose during trial when a witness was called. The trial court asked counsel for the State and for the defense if the jury should be removed. Prince's counsel did not respond and the jury remained in the courtroom. During the ensuing discussion, the State cited a case concerning the rule and gave the holding. We note that during the discussion, Prince's counsel also referred to a decision and holding by this court in the jury's presence.

We find the State's action undertaken while arguing a point for immediate ruling before the trial court was not "reading law" to the jury and find no merit to this enumeration of error.

5. Prince contends the trial court erred in denying access to notes used by a witness to refresh his recollection at trial.

Prince's counsel cross-examined Lt. Carlton Morris concerning items found on the ground near the victim's body. In particular, police found a can of Skoal wintergreen tobacco. Prince had told police Skoal wintergreen was the brand of tobacco he used. After several questions concerning the Skoal can, Prince's counsel said, "I noticed during the break you were reading some notes to refresh your memory. Is that where you found this concerning the Skoal can?" Lt. Morris replied, "No, [the district attorney] asked me about the Skoal yesterday and then he brought it back up today."

Prince, citing *Baxter v. State*, 254 Ga. 538 (18) (331 SE2d 561) (1985), argues that as a defendant in a criminal case he had a right, upon request, to examine a document used by a witness to refresh his recollection.

However, as is evident from the officer's response he had not used his notes to refresh his recollection concerning the Skoal can and debris found at the scene. It also seems evident from counsel's question he sought to learn whether or not Lt. Morris had used the notes to refresh his memory concerning the Skoal can.

Since the trial court had no indication that the witness was using notes to refresh his memory concerning the subject under inquiry, we find no error.

6. Prince contends the trial court erred in not giving curative instructions or granting a mistrial based on argument made by the prosecutor which he contends was improper. However, Prince merely objected to the argument at trial and requested no action. " '(I)t is well-settled that a sustained objection to improper argument of counsel cannot serve as the basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike or denied request for curative instructions.' " *Hall v. State*, 180 Ga. App. 881, 883 (350 SE2d 801) (1986), quoting *Keen v. State*, 164 Ga. App. 81, 88 (296 SE2d 91) (1982).

7. We find Prince failed to preserve his remaining enumerations of error for appeal by not making timely objections at trial. See *Rivers v. State*, 250 Ga. 303 (7) (298 SE2d 1) (1982); *Jones v. State*, 243 Ga. 820, 827 (256 SE2d 907) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 6, 1987.

*Jimmy D. Berry*, for appellant.

*Thomas J. Charron*, District Attorney, *Debra H. Bernes*, *Nancy I. Jordan*, *Jack E. Mallard*, Assistant District Attorneys, *Michael J. Bowers*, Attorney General, *J. Michael Davis*, Assistant Attorney General, for appellee.