## S99A0627. CROSS v. THE STATE.
(520 SE2d 457)

HINES, Justice.

Jeffery Cross was convicted of malice murder, armed robbery, and theft by taking a motor vehicle in connection with the fatal bludgeoning of Wallace Marvin Fugate IV. The State sought the death penalty, but the jury returned a sentence of life without parole for the murder. Cross challenges the sufficiency of the evidence of his guilt and the trial court's refusal to strike a potential juror for cause. He also claims that his trial counsel was ineffective, principally during jury voir dire. However, Cross's contentions of error are without merit, and we affirm the convictions.[1]

---

[1] The murder and related crimes occurred on November 3, 1993, and Fugate's body was recovered on November 5, 1993. On November 17, 1993, a Putnam County grand jury

The evidence at trial included Cross's videotaped statement to police, and construed in favor of the verdicts, showed that Cross and his roommate Shawn Whatley planned to beat and rob Fugate. They were especially interested in getting Fugate's car. On November 2, 1993, the two men went to Fugate's home to commit the crimes; however, they were thwarted because Fugate's roommate was home. Around 2:00 p.m. the next day, Cross and Whatley returned to Fugate's residence to carry out their plan. Cross had picked up a metal pipe and hidden it in his clothing. When Cross and Whatley arrived this time, Fugate was home alone, and he did not hear their knocking on the door because music was playing loudly. Finally, Fugate heard the men and let them in. As Fugate sat on the couch with his back to Cross, Cross slid the metal pipe from his clothing and "went straight for" Fugate, striking him over the head with the pipe. Cross wielded the pipe like a baseball bat and struck Fugate in the head at least seven times. Six of the blows crushed Fugate's skull and he died as the result of severe brain injuries.

Whatley removed Fugate's car keys from the body. Cross tried to clean some of Fugate's blood off the couch and floor and he and Whatley wrapped the body in blankets and other items from the home. They then loaded the body into the back of Cross's ex-girlfriend's station wagon. They also took items from Fugate's home, including some compact discs and a pool cue, and put them in the trunk of Fugate's car. Whatley drove Fugate's car and Cross followed in the station wagon. They drove to the site of an abandoned house and tried to bury the body there, but the ground was too hard. The men transferred Fugate's body to the trunk of his own car, and headed for their home. On the way, Cross tossed out the murder weapon. They arrived home and explained blood on themselves and the blood-stained station wagon to Cross's ex-wife and ex-girlfriend, who both also lived there, by saying that they hit a deer and that the dead animal was then in the trunk of Fugate's car. Whatley also explained that the new vehicle was his from a former marriage. Then Cross, Whatley, and Cross's ex-wife and baby got into Fugate's car

---

indicted Cross for malice murder, armed robbery, and theft by taking Fugate's motor vehicle. Cross moved for a change of venue, and on December 7, 1994, the Superior Court of Putnam County transferred trial of the case to Morgan County. The State sought the death penalty. Cross was tried before a jury February 9-16, 1995, and found guilty of all charges. In the sentencing phase, on February 18, 1995, the jury found aggravating circumstances, and Cross was sentenced to life imprisonment without parole for the murder; Cross was also sentenced to a consecutive term of life imprisonment for the armed robbery and a consecutive term of 20 years for the theft charge. Trial counsel filed a motion for new trial on March 24, 1995. New counsel filed amended motions for new trial on November 11, 1997, and on October 13, 1998. Cross was denied a new trial on October 13, 1998. A notice of appeal was filed on November 10, 1998, and the appeal was docketed in this Court on January 28, 1999. On March 22, 1999, the case was submitted for decision without oral argument.

and drove to Atlanta. After dropping off the woman and baby at a friend's home, Cross and Whatley threw Fugate's body into a trash dumpster in Norcross.

A lookout was posted for Fugate and his missing vehicle, and on November 4, 1993, the police stopped the car; Whatley was driving and Cross and his ex-wife and baby were passengers. Whatley was found in possession of Fugate's car keys, driver's license, photographic I.D., and employee tie. After Cross confessed to the crimes, the police were able to recover Fugate's body and the murder weapon and to locate the site where the men had attempted to bury the body.

1. Cross contends that the verdicts and judgments were contrary to the evidence and decidedly against the weight of the evidence because of the medical examiner's trial testimony that the victim may have been unconscious or dead after the first blow. He argues, therefore, that he could not have been convicted of armed robbery inasmuch as that crime requires knowledge or apprehension on the part of the victim, nor could he be convicted of the "felony murder charge" predicated upon armed robbery. But both Cross's premise and conclusion are faulty. Cross was charged with and convicted of malice murder, not felony murder. What is more, "[i]t is well-settled that a defendant commits a robbery if he kills the victim first and then takes the victim's property." *Lee v. State*, 270 Ga. 798, 801 (5) (514 SE2d 1) (1999); *Francis v. State*, 266 Ga. 69, 70-71 (1) (463 SE2d 859) (1995); *Crowe v. State*, 265 Ga. 582, 594 (21) (458 SE2d 799) (1995); *Prince v. State*, 257 Ga. 84, 85-86 (1) (355 SE2d 424) (1987).

The evidence was sufficient to enable a rational trier of fact to find Cross guilty beyond a reasonable doubt of malice murder, armed robbery, and theft by taking. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cross next contends that the trial court erred by refusing to strike prospective juror Moore for cause. During voir dire, defense counsel asked if the jury found Cross guilty of murder and found an aggravating circumstance but the death penalty was rejected, would anyone automatically impose life imprisonment without parole rather than life in prison and Moore responded affirmatively. Citing no authority for the proposition that such response required excusal for cause, Cross urges that the alleged error prevented him from having a fair and impartial venire resulting in his being denied a life sentence. However, the contention is unavailing.

At trial, defense counsel objected that Moore's response was a "life without parole *Witherspoon* violation," and that Moore should be removed. At that time, the court refused to excuse Moore on that basis, but the court proposed, and defense counsel agreed, that the court would put Moore on its "*Witherspoon* list," allowing counsel the opportunity for further questioning. Even though other venireper-

sons were later called for additional questioning, defendant did not recall Moore. Ultimately, the State used its own peremptory strike against Moore and she did not serve on the jury.

*Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), addresses juror disqualification in regard to the death penalty, and it provides no basis for reversal for a defendant who receives a sentence of life in prison without parole.[2] *Turner v. State*, 268 Ga. 213, 217 (5) (486 SE2d 839) (1997); see also *Beasley v. State*, 269 Ga. 620, 625 (13) (502 SE2d 235) (1998). Moreover, even accepting that Cross raised an objection analogous to a *Witherspoon*-type violation, Cross cannot now complain about the failure to excuse for cause because he acceded to the trial court's proposal to later allow further questioning of the prospective juror, and thus, implicitly defer a final ruling. See Uniform Superior Court Rule 10.1; *Cargill v. State*, 255 Ga. 616, 624, n. 7 (340 SE2d 891) (1986).

3. Finally, Cross fails in the contention that trial counsel rendered ineffective assistance. In order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show both that counsel's performance was deficient and that the deficiency was prejudicial to his defense. *Nhek v. State*, 271 Ga. 245, 247 (3) (517 SE2d 521) (1999), citing *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The first part of the test requires that the defendant "overcome the 'strong presumption' that counsel's performance fell within a 'wide range of reasonable professional conduct' and that counsel's decisions were 'made in the exercise of reasonable professional judgment.' " *Nhek* at 247 (3). In order to satisfy the second part of the test, the defendant must show that there is a reasonable probability that, absent counsel's deficiency, the result of the trial would have been different. Id. Cross does not carry his burden.

(a) Seven panels of potential jurors were examined during voir dire. The court and counsel for both sides kept "hit lists" of names of venirepersons who gave equivocal or troubling responses to *Witherspoon* questions or inquiries regarding publicity surrounding the case. At the conclusion of voir dire of the panels, the trial court conferred with counsel to determine if either side wanted to question any of the potential jurors further about death penalty qualification or publicity issues. Cross urges that one of his two attorneys, B. Andrew Prince, was ill-prepared and deficient, and thus ineffective,

---

[2] The correct standard for assessing the disqualification of a prospective juror because of the juror's views on capital punishment " 'is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." ' " *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997), quoting *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985).

in selecting the jury because counsel took part in this conference without his "hit list" in hand, and he maintains that venirepersons Hughes, Miller, Lefeaux and Bone should have been requestioned.

Prince testified by deposition for the purpose of Cross's motion for a new trial. Prince, who at the time of Cross's trial had been a member of the bar for 20 years and whose practice was substantially in the area of criminal law, conceded that at the time of the conference in question, he did not physically have a complete "hit list" with him; however, he testified that the "hit list" was "just several single pieces of paper that we wrote juror's down when we got a hit on a *Witherspoon* question" but that when it came time to strike the jury, Prince had his "notes as to what occurred and who had said what and which." Prince further testified that he had an entire weekend before striking the jury to consult with co-counsel, and had exhaustively gone over the list and his notes in making decisions about the jury composition. Thus, Cross has not demonstrated that the mere physical lack of the list at that juncture caused counsel's performance to fall outside the wide range of reasonable professional conduct. *Nhek* at 247 (3). What is more, Cross has failed to show that had Prince then been in possession of his "hit list" he would have proceeded any differently with regard to the cited individuals or any other member of the venire.

As to Hughes, Miller, Lefeaux and Bone[3] who Cross now asserts are problematic, he has not shown prejudice from Prince's failure to requestion them. Cross cites Hughes's and Miller's views on the death penalty as raising *Witherspoon* or reverse-*Witherspoon* concerns; however, any such complaint is not viable because Cross did not receive the death penalty. *Turner v. State*, supra at 217 (5); *Beasley v. State*, supra at 625 (13). Cross likewise fails in his implicit claim that Lefeaux and Bone could or should have been disqualified because of alleged bias due to prior knowledge of the case. The record shows that even though Lefeaux was not absolute in his answer, he stated that he thought he could put aside his knowledge of the case; Bone's only knowledge of the case was what he had read in the newspaper and he stated that he did not know any details. Neither man indicated any opinion about the circumstances of the case or of the defendant's guilt or innocence. "A prospective juror is not required to be ignorant of the facts and issues involved in a case; '(i)t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' *Irvin v. Dowd*, 366 U. S. 717, 722-723 (81 SC 1639, 6 LE2d 751) (1961). See also *Wood-*

---

[3] Two members of the venire had the surname Bone. Ms. Bone was the subject of a defense peremptory strike; Mr. Bone was selected for the jury. Cross's argument addresses Mr. Bone.

*bury v. State*, 264 Ga. 31, 32 (2) (440 SE2d 461) (1994)." *Cromartie v. State*, 270 Ga. 780, 784 (9) (a) (514 SE2d 205) (1999).

(b) Cross likewise fails in his claim that Prince was ineffective in not seeking curative instructions after a spectator at trial made an inflammatory statement about Cross, possibly within the hearing of the jury. Prince moved for a mistrial, which was denied, and he then declined the court's offer to give curative instructions to the jury. He stated to the court that he thought such instruction would "just compound" anything the jury might have heard. Prince's decision not to get curative instructions was part of a legitimate trial strategy and is within the range of reasonable professional conduct. *Fargason v. State*, 266 Ga. 463, 464 (2) (467 SE2d 551) (1996).

(c) Lastly, the fact that subsequently Prince was effectively disbarred by acceptance of the voluntary surrender of his license to practice law (*In the Matter of B. Andrew Prince*, 268 Ga. 880 (494 SE2d 337) (1998)) does not compel the conclusion that his representation of Cross satisfies the test for ineffective assistance of counsel under *Strickland v. Washington*, supra. Prince's professional misconduct in unrelated matters and cases does not establish either inadequacy or prejudice to Cross in his criminal case. Thus, the attorney's effective disbarment does not relieve Cross of making the requisite showing under *Strickland v. Washington* that trial counsel's representation fell below an objective standard of reasonableness. *White v. State*, 267 Ga. 523, 524 (7) (481 SE2d 804) (1997).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 1999.

*B. W. Crecelius, Sr.*, for appellant.

*Fredric D. Bright, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General*, for appellee.