S08A0007. CURINTON v. THE STATE.
(657 SE2d 824)

HINES, Justice.

Following the denial of his motion for new trial, Dejuan Valdez Curinton appeals his convictions for felony murder, aggravated assault, and possession of a firearm during the commission of a crime in connection with the fatal shooting of Edward Rivers, Jr. His sole challenge is to the sufficiency of the evidence of his guilt of felony

murder while in the commission of armed robbery. Finding the challenge to be without merit, we affirm.[1]

Curinton contends that there was insufficient evidence to support his conviction for felony murder based upon armed robbery, either as principal or as a party to the crime, because the evidence showed his mere presence at the crime scene, and that he was guilty only of aiding and abetting an attempted drug buy. But, that is far from the case.

The evidence construed in favor of the verdicts showed that on July 28, 2004, co-defendant Rico Lucky took Kevin Williams and a friend known as "Link" to an apartment complex in Clayton County. Curinton lived there and the men went to find him because "he knew the guy that had the weed"; Curinton joined Lucky, Williams, and Link. Lucky and Williams stayed behind while Curinton and Link went to the apartment of Edward Rivers, Jr., who was known to sell large quantities of drugs. Rivers was having a sexual relationship with Curinton's girlfriend, and Rivers had commented to Curinton about the relationship in front of a group of people.

Rivers's roommate, Gregory Yarns, was in the bathroom when he heard Curinton and Link knock on the door of the apartment. When Rivers answered the door, Yarns heard a gunshot and then heard the voices of two people, as they were "rumbling through the house." After the intruders left, Yarns found Rivers on the floor; he was breathing but unresponsive. Yarns also found both his and Rivers's wallets missing. After the shooting, Curinton and Link ran from the apartment to Lucky's waiting car and the men drove away.

Rivers received a gunshot wound to the upper left front of his chest. The wound was a "contact gunshot wound," meaning the barrel of the firearm was in contact with the skin or clothing over the skin at the time the trigger was pulled. The bullet pierced Rivers's left lung causing massive hemorrhaging in his chest, which resulted in his death.

---

[1] The crimes occurred on July 28, 2004. On July 20, 2005, a Clayton County grand jury indicted Curinton, along with Rico Antonio Lucky, for Count 1 – malice murder; Count 2 – felony murder while in the commission of aggravated assault; Count 3 – felony murder while in the commission of armed robbery; Count 4 – aggravated assault with the intent to rob; Count 5 – aggravated assault with a deadly weapon; Count 6 – armed robbery; and Count 7 – possession of a weapon during the commission of a crime, to wit: armed robbery. Curinton was tried before a jury December 5-9, 2006, and found guilty of all charges. On December 11, 2006, he was sentenced to life in prison on Count 3, a concurrent 20 years in prison on Count 5, and five years in prison on Count 7, to be served consecutively to the sentence imposed on Count 5; the trial court declared that it merged the remaining charges with Count 3 for the purpose of sentencing. A motion for new trial was filed on December 12, 2006, and the motion was denied on June 5, 2007. A notice of appeal was filed on June 6, 2007, and the case was docketed in this Court on September 5, 2007. The appeal was submitted for decision on October 29, 2007.

Initially, Lucky told the police that while they were in the getaway car, Curinton stated that he shot Rivers. Williams likewise told police that Curinton said that he shot Rivers. Subsequently, Lucky and Williams changed their stories and indicated that Link had shot Rivers. However, Lucky also stated that he used Curinton and Link to do his "dirty work," that he set up the robbery, and that he created the situation by "egging on" the ill will between Curinton and Rivers.

It is true that the evidence that Curinton was the shooter is controverted; however, when reviewing the sufficiency of the evidence, this Court does not re-weigh the evidence or resolve conflicts in testimony, but instead defers to the jury's assessment of the weight and credibility of the evidence. *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007). What is more, Curinton did not have to fire the fatal shot in order to be guilty as a principal for the felony murder while in the commission of armed robbery, because felony murder is accomplished when the defendant causes the death of another human being while in the commission of the underlying felony. OCGA § 16-5-1 (c).[2] And the evidence was that attendant to the shooting of Rivers, both Curinton and Link rummaged through Rivers's residence and took his wallet as well as that of his roommate. An armed robbery is committed even if the perpetrator kills the victim first and then takes the victim's property. *Lyons v. State*, 282 Ga. 588, 592 (1), n. 3 (652 SE2d 525) (2007); *Cross v. State*, 271 Ga. 427, 429 (1) (520 SE2d 457) (1999).

Even assuming arguendo, that Curinton did not directly commit the armed robbery underlying the felony murder charge at issue or the other crimes for which he was convicted, there was ample evidence that he was a party to such crimes.[3] See OCGA § 16-2-20 (a).[4] Curinton was more than merely present at the crime scene. By his own admission, he brought Link to Rivers's apartment for a criminal purpose, i.e., to buy drugs, and fled the scene, either willingly or unwillingly, with Link, Lucky and Williams following the shooting. Presence, companionship, and conduct before and after an offense is committed are circumstances from which participation in

---

[2] OCGA § 16-5-1 (c) provides:
  A person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice.
[3] The trial court instructed the jury on the principle of party to a crime.
[4] OCGA § 16-2-20 (a) provides:
  Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.

the criminal act may be inferred. *Jones v. State*, 242 Ga. 893 (1) (252 SE2d 394) (1979). See also *Johnson v. State*, 276 Ga. 368, 371 (1) (578 SE2d 885) (2003).

The evidence was sufficient to enable a rational trier of fact to find Curinton guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 25, 2008.

*Patricia F. Angeli*, for appellant.

*Jewel C. Scott, District Attorney, Anece B. White, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.