## S12A0808. SIMMONS v. THE STATE.
### (733 SE2d 280)

HUNSTEIN, Chief Justice.

Kelvin Simmons was convicted for the malice murder of Sheila Easley in February 2002.[1] Following the trial court's denial of his motion for new trial, Simmons appeals. He contends the evidence was insufficient to convict him, the trial court committed procedural errors, the trial court erred in instructing the jury, and trial counsel was ineffective. Finding no error, we affirm.

The evidence adduced at trial showed that Sheila Easley's body was discovered inside the doorway of her home after she did not return to work following her lunch break on January 29, 2001. Easley's upper body was dressed as it had been at work earlier that day, but her lower body was nude except for a jacket covering her. Her underwear was ripped in half under her body and her pants were missing. Investigators found dried seminal fluid on her leg and lower abdomen, which tested positive for Simmons' DNA. The State Medical Examiner's office performed an autopsy on Easley and determined that she died as a result of strangulation.

Testimony at trial showed that Simmons and Easley had been in a relationship on and off since 1997 and had twins together in 1998. Over the course of the relationship, Simmons became increasingly suspicious, jealous, and abusive. In March of 2000, Easley ended the relationship and asked Simmons to move out. After the break-up,

---

[1] The murder occurred on January 29, 2001. Simmons was indicted in Baldwin County on charges of malice murder and felony murder. He was found guilty of malice murder and sentenced to life in prison. The felony murder charge stands vacated by operation of OCGA § 16-1-7. His motion for new trial, filed February 12, 2002 and amended three times, was denied August 19, 2004. Years later, after obtaining new appointed counsel, Simmons moved again for a new trial. The trial court vacated its prior denial of the motion for new trial and held a new evidentiary hearing on July 7, 2011. The trial court denied the motion on September 9, 2011, and this appeal followed. A notice of appeal was filed October 5, 2011. The appeal was docketed for the April 2012 term in this Court and was submitted for decision on the briefs.

Simmons frequently showed up at Easley's workplace, watched her house, called her mother's house at all hours of the night, and went through the mail in her mailbox. There was evidence that suggested Simmons had been in the crawl space under Easley's house with make-shift listening and recording devices.

On the day Easley was killed, Simmons was seen by one witness shortly after 3:00 p.m. speeding around a curve less than a mile from Easley's home, going so fast the witness was run off the road. Simmons visited his mother's house around 4:00 p.m. He washed and dried clothes that he had brought in a plastic bag. The GBI later recovered the clothes and identified them as the clothes he was seen wearing earlier in the day. Around 5:30 p.m., Simmons went to the car wash where his nephew, Jabber Sanford, worked. When Sanford visited him after his arrest, Simmons asked Sanford to say that he had come by at 3:00 p.m. rather than 5:30 p.m.

At trial, the State produced three of Simmons' former girlfriends who testified about abusive relationships with Simmons. The women testified that Simmons was extremely jealous and suspicious and that he physically abused them and threatened to kill them. Two women testified that Simmons had choked them.

1. Simmons contends that his conviction is based entirely on circumstantial evidence, and the jury must find that the evidence is sufficient to exclude every reasonable hypothesis except for that of his guilt. See OCGA § 24-4-6. Whether the evidence excluded every other reasonable hypothesis but that of guilt is a question for the jury. *Smith v. State*, 290 Ga. 428 (1) (721 SE2d 892) (2012). We will not disturb the jury's verdict unless it is insupportable as a matter of law. Id. The evidence in this case, though circumstantial, was sufficient for the jury to conclude beyond a reasonable doubt that Simmons was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Despite Simmons' allegation to the contrary, the trial court did not err in denying Simmons' motion for continuance. Denial of a motion for continuance is within the sound discretion of the trial court, and this Court will not interfere unless there was a clear abuse of discretion. *Collum v. State*, 281 Ga. 719 (5) (642 SE2d 640) (2007). Simmons sought a continuance to gather more data or obtain an expert's opinion regarding DNA evidence that he thought would implicate another person. The trial court found that since Simmons had not opted in to reciprocal discovery under OCGA § 17-16-2, he was not entitled to additional documents, nor the delay to obtain them. Thus, the trial court did not abuse its discretion in denying the motion for continuance.

3. Simmons moved the trial court to grant a change of venue, claiming that his trial and a prior mistrial had received far-reaching publicity that was likely to contaminate the jury pool in Baldwin County. The trial court denied the motion. The denial of a motion for change of venue will not be disturbed absent an abuse of discretion. *Walden v. State*, 289 Ga. 845 (2) (717 SE2d 159) (2011). The trial court initially denied Simmons' motion for change of venue outright, but then reconsidered and agreed to inquire into the impact of pre-trial publicity during voir dire. "[T]he question is not the number of jurors who had heard about the case; rather, the question is whether those jurors who had heard about the case could lay aside their opinions and render a verdict based on the evidence." Id. at 849 (citation and punctuation omitted). During voir dire, none of the jurors showed any bias or influence due to pre-trial publicity. Therefore, it was not error for the trial court to deny the motion to change venue.

4. Simmons complains that the trial court erred because the first alternate juror was selected despite being married to a juror who served on the jury during the prior mistrial.

There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, a jury verdict will not be upset solely because of such conduct, unless the [conduct is] so prejudicial that the verdict must be deemed "inherently lacking in due process." Our inquiry then must be directed to whether this error is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injury.

*Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996) (citations and punctuation omitted). Here, when the trial court learned that the alternate's wife had served on the jury in the first trial, it questioned the juror. The juror stated that he had told the other members of the jury that his wife had been on the jury in the first trial, which resulted in a mistrial. The juror did not know why the first trial resulted in a mistrial. Following this inquiry, the trial court immediately dismissed the juror, replaced him with the other alternate, and questioned the jury as a whole. None of the other jurors heard the first alternate juror say anything about the case itself. We find that any improper jury conduct was harmless since the juror did not know why the initial trial resulted in a mistrial and none of the other jurors heard him say anything material about that trial. Certainly, the

conduct was not so prejudicial that the verdict is inherently lacking in due process as to require a new trial.

5. Simmons argues that his conviction should be reversed because the trial court expressed an opinion about facts in evidence. Before voir dire, the trial court told the jury that if the Grand Jury is "convinced that there is sufficient evidence that a crime has been committed to warrant a trial, [it] has the duty to indict or present the accused." Additionally, the trial court's charge to the jury included the phrase, "the Court does not express an opinion as to whether the Defendant has committed any other offense." Simmons complains that these statements reflected both the trial court's opinion that the Grand Jury was *convinced* a crime had been committed and the trial court's belief that Simmons had committed at least *some* offense.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. However, the "statute is violated only when the trial court's instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." *Parker v. State*, 276 Ga. 598, 600 (5) (581 SE2d 7) (2003) (citation and punctuation omitted).

Here, the trial court read the following standard description of a criminal trial to the jury:

> Grand Jurors do not try criminal cases. They ordinarily hear from witnesses for the State. After hearing from these witnesses, if they are convinced there is sufficient evidence that a crime has been committed to warrant a trial, the Grand Jury has the duty to indict or present the accused.

Although Simmons contends that the trial court intimated that the Grand Jury was convinced a crime had been committed, it is unlikely that any reasonable juror would have construed the trial court's instruction in that way. The statement clearly says that the Grand Jury has the duty to indict if it is convinced that there is enough evidence of a crime to warrant a trial. The trial court's description of the role of the Grand Jury did not improperly inject an opinion on facts in evidence.

In the context of instructing the jury on the limited purpose for which it could consider similar transactions, the trial court stated: "The Court does not express an opinion as to whether the Defendant has committed any other offense." Considering the charge in context, no reasonable juror could have construed the charge to mean that the trial court believed that Simmons had committed *some* offense. We

find no error in the trial court's instruction regarding the Grand Jury's role or similar transaction evidence.

6. During his opening statement, the prosecutor stated that, during the course of the trial, the jury would hear that Simmons had asked family members "who would be a good lawyer if I killed somebody?" The trial court later granted a motion in limine to exclude that testimony. Simmons contends that the trial court erred in denying his motion for mistrial after the court ruled that the testimony was inadmissible.

"[A] conviction will not be reversed if the opening statement was made in good faith, and the trial court instructs the jury that opening statements are not to be considered as evidence during deliberations." *Mikell v. State*, 286 Ga. 722, 723 (2) (690 SE2d 858) (2010) (citation and punctuation omitted). Here, the prosecutor referred to the testimony in his opening statement fully anticipating that the evidence would be admitted. Further, the trial court instructed the jury that "what the lawyers say during a trial is not evidence" and also made a final charge that opening statements are not evidence. Under these circumstances, the trial court did not abuse its discretion in denying Simmons' motion for mistrial due to the prosecutor's opening statement. See *Zackery v. State*, 286 Ga. 399 (2) (688 SE2d 354) (2010).

7. Simmons alleges that the trial court erred because it did not allow him to cross-examine a witness, Kenny Adams, for impeachment unless he introduced Adams' written statement as defense evidence. Simmons did not want to lose the right to make the final closing argument so he chose not to tender the written statement. Nevertheless, Simmons was allowed to thoroughly cross-examine Adams without objection or interruption. On re-cross, Simmons' counsel asked Adams to read the first five lines of his prior statement. The trial court asked if this was for the purpose of impeachment, and Simmons' counsel did not respond. When the trial court reminded Simmons' counsel at a bench conference that he would "get into trouble about closings," counsel agreed to withdraw the questions about the document without ever arguing that his questioning was for the purpose of impeachment. Because Simmons' counsel conducted a thorough examination of the witness, did not assert that his purpose in using the statement was to impeach the witness, and voluntarily withdrew his questions about the statement, we find no error.

8. Simmons claims that the trial court erred when it admitted similar transaction evidence, certain autopsy photographs and DNA evidence.

(a) Simmons contends the trial court erred in admitting similar transaction evidence of his past violent behavior towards prior girlfriends. Simmons claims that in admitting evidence of similar transactions, the trial court also admitted evidence that inappropriately placed his character in issue. He also claims he was not provided adequate notice of the similar transaction evidence by the State.

For evidence of similar transactions to be admissible, the State must prove:

> (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

*Moore v. State*, 290 Ga. 805, 807 (2) (725 SE2d 290) (2012) (citation and punctuation omitted). Prosecutors seeking to introduce evidence of similar transactions are required to provide notice "in writing, served upon the defendant's counsel, and . . . state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced" in advance of a court hearing on the matter. Uniform Superior Court Rule 31.3 (B). An "appellate court will not disturb the findings of the trial court on the issue of similarity or connection of similar transaction evidence unless they are clearly erroneous." *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012) (citation and punctuation omitted) (approving two standards of review for admission of similar transaction evidence: clear error for the trial court's findings of fact and abuse of discretion for the trial court's evidentiary rulings).

At trial, the State presented three of Simmons' ex-girlfriends as witnesses. They testified that Simmons had exhibited jealous and violent tendencies toward them. All three women testified that Simmons had physically assaulted them, including choking or strangling them, especially when he was jealous; threatened to kill them; and broken into their homes. Further, two women testified that Simmons stalked them after their respective romantic relationships ended. The trial court carefully considered the admissibility of the proffered similar transactions evidence at the Rule 31.3 (B) hearing. The trial court's finding of similarity was not clearly erroneous and will not be disturbed on appeal. Further, the trial court did not abuse

its discretion when admitting the testimony in question to demonstrate Simmons' pattern of jealousy and violence toward the women with whom he was romantically involved. Finally, the State complied with its requirements under Rule 31.3 by providing written notice to Simmons about its plans to introduce similar transaction evidence through the testimony of three of his former girlfriends, including a summary of the women's testimony and their current contact information. See *Jordan v. State*, 267 Ga. 442 (3) (480 SE2d 18) (1997). Therefore, the trial court did not err in admitting the similar transaction evidence.

(b) Simmons complains that the trial court erred in admitting autopsy photographs of the victim's eyes because the eyes had been "manipulated" in the photographs. Photographic evidence may be admitted at the discretion of the trial court. *Johnson v. State*, 289 Ga. 106 (2) (709 SE2d 768) (2011). "Pre-incision photos such as the ones currently at issue which depict the location and nature of the victim's wounds are admissible because they are relevant and material." *Banks v. State*, 281 Ga. 678, 680 (2) (642 SE2d 679) (2007) (citation and punctuation omitted). The photographs in this case were admitted to show injury to the victim's eyes and eyelid, which occurred as a result of blood vessel constriction during strangulation. The photographs were taken before any incisions were made, and the manipulation of the eyes and eyelids — lifting the upper and lower lids to photograph the injuries underneath — was necessary to show the injuries only visible upon lifting the lids. Cf. *Banks*, 281 Ga. at 680 (2) ("Post-incision autopsy photographs 'are admissible if necessary to show some material fact that becomes apparent only due to the autopsy.'") The trial court did not commit error in admitting the photographs depicting the injuries to the victim's eyes during strangulation.

(c) Simmons also contends that the trial court erred when it denied his request to suppress DNA evidence he claims was collected improperly because the samples were collected before the search warrant was executed. This claim is without merit. The trial court conducted a full evidentiary hearing on this matter. No testimony was presented at the hearing to support Simmons' theory that the DNA evidence was collected before the search warrant was signed. Rather, both the sheriff and the nurse who testified at the hearing confirmed that the search warrant was executed around midnight and that the blood and other samples were collected after midnight. In fact, Simmons' own counsel admitted after the testimony was given that he had failed to show that the DNA was collected improperly. Therefore, the trial court did not err in denying the motion to suppress the DNA evidence.

9. Simmons alleges that the trial court erred in charging the jury regarding parties to a crime and in failing to instruct the jury to disregard emotional outbursts from the victim's mother during the trial. We find no error in the jury instructions.

(a) Simmons' defense at trial was that another person could have been responsible for the crime. During his opening statement, Simmons' counsel asserted that DNA found under the victim's fingernail indicates that another person could have been present at the crime scene. Later, a forensic biologist testified that there was DNA under the victim's fingernail that belonged to the victim and an unknown male. She further testified that a visual comparison indicated the DNA did not match that of Simmons. During the charge conference, Simmons objected to the trial court's proposed charge regarding parties to a crime. Overruling the objection, the trial court determined that the blood under the victim's fingernail supported the theory that another party may have participated in the crime.

If there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue. *Hicks v. State*, 287 Ga. 260 (2) (695 SE2d 195) (2010). Here, the trial court did not err in charging the jury on parties to a crime.

(b) "Demonstrations and outbursts which occur during the course of a trial are matters for the trial court's discretion." *Forney v. State*, 255 Ga. 316, 318 (3) (338 SE2d 252) (1986). We have recognized that "[m]any, if not most, trials by jury involve some degree of emotion by at least one party or the other. It would be unreasonable to expect that all emotions be completely frozen during a trial by jury when such effective bridle on emotions cannot be sustained elsewhere." Id. (citation and punctuation omitted). At trial, the victim's mother began to cry quietly on the stand during her testimony on direct examination. The prosecutor asked her if she needed a minute to collect herself, and the trial court immediately ordered a 15 minute recess. Simmons has not identified any other incident of emotion or disruption during the trial. Further, Simmons did not object during the course of the trial or request any curative instructions.

When a party fails to object to a jury charge or the omission of a charge during trial but raises the issue on appeal, this Court reviews the charge for plain error. *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011). "The proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceeding." *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011) (citation and punctuation omitted). Here, as soon as the victim's mother became emotional, the trial court ordered a recess. The trial court's conduct was clearly within its discretion.

We find no error in the trial court's failure to give a curative instruction about the "outburst"; thus, we need not reach the other prongs of the *Kelly* test.

10. Finally, Simmons asserts that he was provided ineffective assistance of counsel because his trial counsel was under personal stress, was inexperienced, failed to opt-in to reciprocal discovery, failed to object to the prosecutor's statement, and failed to conduct proper jury research.

Georgia courts recognize a "strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003) (citation and punctuation omitted). To overcome this presumption, Simmons must establish not only that trial counsel's performance was deficient, but also that the deficiency so prejudiced the defense that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Simmons claims that his trial counsel provided ineffective assistance because he had a grievance pending against him in another matter at the time of trial, surrendered his license to practice law a few months after Simmons' trial, and was under personal and financial strain. First, counsel's professional misconduct in an unrelated matter "does not establish either inadequacy or prejudice to [Simmons] in his criminal case." *Cross v. State*, 271 Ga. 427, 432 (3) (c) (520 SE2d 457) (1999). Similarly, counsel's voluntary surrender of his license "does not compel the conclusion that his representation of [Simmons] satisfies the test for ineffective assistance of counsel under *Strickland v. Washington*." Id. Further, the mere fact that counsel was under personal and financial stress does not have any bearing on the effectiveness of his performance in this particular matter. Thus, trial counsel was not ineffective per se due to discipline or subsequent surrender of his license.

(b) Simmons next complains that his trial counsel was ineffective due to inexperience because he had been licensed to practice law for just over three years at the time of Simmons' trial. We have previously held that an attorney's lack of experience is not grounds for a claim of ineffective assistance of counsel under *Strickland*. *Johnson v. State*, 287 Ga. 767, 769 (2) (700 SE2d 346) (2010). Moreover, during the years that trial counsel practiced law, his practice was almost exclusively criminal defense, and he had tried 16 cases. Further, his co-counsel had been practicing law for approximately 18 years at the time of trial and had handled about 10 criminal jury trials. Trial counsel's level of experience did not constitute ineffective assistance

of counsel. See id. (rejecting claim of ineffective assistance in part because trial counsel was assisted by a "seasoned attorney").

(c) Simmons claims that his counsel was ineffective for failing to opt-in to reciprocal discovery. Simmons "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Farris v. State*, 290 Ga. 323, 326 (3) (720 SE2d 604) (2012) (citation and punctuation omitted). Here, counsel consulted with experienced trial attorneys and ultimately determined that reciprocal discovery would not offer any benefit to Simmons, and he did not want to create any additional obligations. Therefore, his decision not to opt-in to reciprocal discovery was a reasonable trial strategy and did not fall below the broad range of reasonable professional conduct.

(d) The remaining grounds for Simmons' claim of ineffective assistance of counsel are without merit. First, Simmons asserts that counsel was ineffective for his failure to object to the prosecutor's statement during opening that Simmons asked family members "who would be a good lawyer if [he] killed somebody?" We have already noted that the trial court instructed the jury that "what the lawyers say during a trial is not evidence" and also made a final charge that opening statements are not evidence. Therefore, even if it was error for Simmons' counsel not to object, there is no reasonable likelihood that the outcome of the trial would have been different if he had objected.

Next, Simmons contends that his counsel failed to conduct sufficient jury research to discover that one of the potential jurors was married to a person who served on the jury in the mistrial. In fact, counsel testified at the hearing on Simmons' motion for new trial that he went through the entire jury list with two people very familiar with the community. Further, we found that no prejudice resulted from seating the first alternate juror since the juror did not know why the initial trial resulted in a mistrial, none of the other jurors heard him say anything about that trial, and the trial court replaced him with another alternate before the close of evidence. Thus, trial counsel's discovery of the relationship in advance of the trial would not in reasonable probability have changed the result of the trial.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 15, 2012.

*Wilson B. Mitcham, Jr.*, for appellant.

*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General,* for appellee.