## S13A0475. SIMPSON v. THE STATE.
### (744 SE2d 49)

BENHAM, Justice.

Appellant Monty Simpson was convicted of malice murder and sentenced to life in prison for the strangulation death of his girlfriend Beverly Jean Williams.[1] For the reasons set forth below, we affirm.

On the evening of March 15, 2010, appellant called 911 reporting the victim was deceased in their hotel room at the Dollar Inn in Dougherty County. When police arrived, appellant told them he had found the victim unresponsive after returning from a walk on a trail behind the hotel. He then told the police he had gone to a store to purchase some beer, but did not actually buy any beer. While police were investigating, appellant twice tried to leave the scene despite being admonished to stay there, and so police placed him in handcuffs and put him in a patrol car. DNA testing confirmed the victim's blood was on appellant's clothes. Appellant stated he gave the victim CPR, but there was no blood on his face or hands even though the victim had dried blood in her nostrils. Police observed fresh scratches on appellant's chest and arm. Police found no evidence of a forced entry into the couple's hotel room. On the day of the victim's death, appellant's neighbor testified he heard "pounding" which he described as sounding like someone throwing a bowling ball. A woman who worked in housekeeping and maintenance at the Dollar Inn testified she had heard the victim and appellant arguing earlier in the day, and she stated appellant later told her the victim was passed out drunk in their room.

The medical examiner testified extensively about the victim's injuries which were as follows: petechiae or "pinpoint hemorrhages" in the face and eyes; abrasions on the face, lower jaw, and neck; bruising on the face; a laceration on the lip; soft tissue hemorrhages of the scalp; soft tissue hemorrhages in the muscles of the neck; and bruising of the arms and hands. The medical examiner explained the petechiae in the face and eyes and the soft tissue hemorrhages of the neck indicated strangulation[2] and the abrasions of the lower jaw

---

[1] The crime occurred on March 15, 2010. On June 23, 2010, a Dougherty County grand jury indicted appellant on charges of malice murder, felony murder, and two counts of aggravated assault. Appellant was tried before a jury on January 28, 2011, and the jury returned a guilty verdict on all charges. On March 3, 2011, the trial court entered an order sentencing appellant to life in prison for malice murder. The felony murder count was vacated as a matter of law, and the aggravated assault counts merged as a matter of fact. Appellant moved for a new trial on March 14, 2011. The trial court denied the motion for new trial on October 29, 2012. Appellant filed a timely notice of appeal, and the case was docketed to the January 2013 term of this Court for a decision to be made on the briefs.

[2] The medical examiner stated the petechial hemorrhages on the inside of the victim's left eyelid "are classic signs of strangulation."

indicated a reflex a victim has to being strangled, bringing their head down to protect their neck resulting in the rubbing of their lower jaw against the assailant's hands. The hemorrhaging of the scalp indicated a blunt force trauma to the head, which trauma, the medical examiner opined, was insufficient to cause the victim's death but would have made the victim less able to defend herself from being strangled. The bruising to the victim's hands was consistent with defensive injuries. The medical examiner concluded the cause of the victim's death was asphyxia due to strangulation in association with blunt force head trauma.

The State also presented evidence of prior difficulties between appellant and the victim. The manager at the Dollar Inn testified that over the two-and-a-half month period the victim and appellant had resided there, he called the police three to four times due to complaints about the couple's arguments. Albany police officers testified about responding to a third party complaint at the Superior Creek Lodge in September 2009 where they found appellant hovering over the screaming victim with his hand drawn back. Police watched the scene unfold through a curtainless window. The officers stated that anytime the victim moved to let them into the room, appellant would raise his fist to the victim in a threatening manner, and she would cower. Finally, police forced their way into the room and arrested appellant.[3] The police testified the victim had bruises and lacerations on her face and arms. Appellant ultimately pled guilty to battery for the September 2009 incident, and the certified copy of his conviction was entered into evidence at trial. A witness testified about an August 2009 incident at the Superior Creek Lodge where he called police after seeing the victim come "flying" out of a room shared with appellant and hit a steel guard railing.

1. Appellant contends the circumstantial evidence against him was insufficient to convict him of murder. At the time appellant was tried in 2010, OCGA § 24-4-6 (2012) provided: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[4] Appellant argues that because there was evidence the victim was intoxicated at the time of her death, evidence she had conditions such as emphysema and early onset of pneumonia, and evidence she had been

---

[3] Appellant attempted to bribe the officer with $20 to avoid arrest and told police the victim was "only a woman."

[4] OCGA § 24-4-6 (2012) was repealed on January 1, 2013, when Georgia's new Evidence Code took effect, and has been replaced with OCGA § 24-14-6 without revision to any substantive language.

known to take prescription medications in the past, it was possible the victim died from a lethal combination of alcohol, medications and existing medical conditions coupled with a drunken fall (which could explain any blunt force trauma to the head). Alternatively, appellant opines someone else was the perpetrator. These contentions are not borne out by the trial record.

Here, there was no evidence the victim died from any cause other than asphyxia due to strangulation. Although at the time of her death the victim had more than twice the legal limit of alcohol in her system, had emphysema, and had the beginning stages of pneumonia in one of her lungs, the medical examiner was unequivocal in her conclusion that the victim died from being strangled by another. Also, the toxicology report concluded the victim tested negative for drugs in her system at the time of death, negating any theory about a lethal combination of alcohol and drugs. And appellant's assertion the victim had a drunken fall is purely speculative. Likewise, there was no evidence presented to the jury of another perpetrator committing the crime. The police found no forced entry to the room for which appellant and the victim both had access. Appellant also had a prior history of violence against the victim in the months leading up to her death, including a prior conviction for battery against the victim. Based on the record at trial, the jury was authorized to find the evidence sufficient to convict appellant of the crimes for which he was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Simmons v. State*, 291 Ga. 705 (1) (733 SE2d 280) (2012) ("Whether the evidence excluded every other reasonable hypothesis but that of guilt is a question for the jury. [Cit.] We will not disturb the jury's verdict unless it is insupportable as a matter of law. [Cit.]").

2. Count 3 of the indictment, which pertains to aggravated assault, states appellant "did assault [the victim] with his hands, objects which when used offensively against [the victim] did result in serious bodily injury to [the victim] when said accused strangled her and caused blunt force trauma to her head. . . ." Appellant contends the State failed to prove appellant used his hands, as indicated in the indictment, to kill the victim. As the basis for his contention, appellant relies on the medical examiner's testimony stating the victim was not bruised on her neck and testimony stating neither the victim's larynx nor her hyoid bone was injured. The medical examiner also explained, however, not every victim of strangulation has external bruising or injury to the neck or has an injured larynx or hyoid bone; the victim's larynx and hyoid bone were likely uninjured because they had hardened from calcification due to age; the victim had soft tissue hemorrhages in the areas adjacent to her larynx and hyoid bone which were consistent with strangulation; and the victim

had abrasions on her lower jaw which were consistent with reflexes strangulation victims have to protect their neck from the assailant's hands. On this record, we are not convinced the State failed in its burden of proof as to aggravated assault. In any event, the aggravated assault count merged for sentencing purposes and, therefore, became moot.

As far as appellant's conviction for murder, which is the count appellant asserts must be reversed, the indictment did not require proof appellant used his hands but proof appellant "did unlawfully and with malice aforethought cause the death of [the victim], a human being, by strangling her and causing blunt force trauma to her head." Use of one's hands is not an essential element of the crime of murder. See OCGA § 16-5-1. The indictment was not required to be exact in describing how appellant strangled the victim. See *Brown v. State*, 290 Ga. 321 (2) (720 SE2d 617) (2012) (indictment was not required to allege what type of instrument was used to shoot the victim). Accordingly, this allegation of error cannot be sustained.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Kevin C. Armstrong*, for appellant.

*Gregory W. Edwards, District Attorney, Kathryn O. Fallin, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General*, for appellee.